270 P.2d 716

## INFIELD v. COPE.

### No. 5660.

Supreme Court of New Mexico.

May 12, 1954.

Johnston Jeffries, Aztec, H. A. Daugherty, Farmington, for appellant.

Charles M. Tansey, Farmington, Gilbert, White & Gilbert, Santa Fe, for appellee.

SADLER, Justice.

This is an appeal from a judgment dismissing the complaint of a decedent's widow seeking damages for mental suffering and impairment of bodily health, said to have resulted from defendant-mortician's wrongful and wanton refusal to permit her to view the body of her husband while in defendant's custody at his mortuary prior to burial, where it had been removed following accidental death in an explosion and fire. The ground of the motion, which the trial court sustained, was that the complaint failed to state a claim upon which relief might be granted. The plaintiff electing to stand on her complaint as filed, the dismissal followed as a matter of course. This appeal is prosecuted to secure a reversal of the trial court's action.

The allegations of the complaint are that plaintiff's husband died on April 13, 1951, from asphyxiation in the course of a fire; that at the time of his death, which occurred at Aztec in San Juan County, New Mexico, and for a short time thereafter, the plaintiff was absent from New Mexico; that the defendant-mortician took custody of the body, removed it to his mortuary in Farmington and prepared it for burial, retaining its custody until April 17, 1951.

The complaint went on to say that after defendant had prepared the body for burial, as aforesaid, the plaintiff arrived in Farmington and requested of defendant that she be permitted to view his body in the casket in which it had been placed by him; that disregarding plaintiff's rights the defendant wrongfully and wantonly refused her

initial and subsequent requests, falsely representing that the corpse was burned or charred beyond recognition; that shortly after the plaintiff's return to New Mexico, and on April 17, 1951, the body was shipped by defendant to Denver, Colorado, the former home of plaintiff and her husband and interred in Evergreen, Jefferson County, Colorado; that due to defendant's representations that the corpse was not recognizable and relying thereon, she cancelled plans for a formal funeral to be attended by friends and other relatives and permitted the body to be buried without viewing the remains.

The plaintiff then sets forth in the complaint that she began to entertain anxiety and doubt as to whether the remains shipped to Colorado and interred, as aforesaid, actually were those of her husband, and that others shared the same doubt, as well as uncertainty whether the cause of death might not be other than asphyxiation; that in order to resolve these doubts and alleviate the mental anxiety and suffering under which she labored, having secured lawful authority so to do, the plaintiff caused her husband's body to be exhumed for the purpose of establishing identity and ascertaining the true condition thereof; that the examination of the body established that it actually was not charred, or burned beyond recognition, as represented by defendant but was in such condition as to enable identification of the remains from features and other physical characteristics as those of her deceased husband. Finally, the plaintiff alleges that, by reason of the premises, she has suffered great mental anxiety, pain and distress, all to her damage in the sum of $25,000 for which she will ever pray.

It should be said at this point that the initial order of dismissal granted leave to plaintiff to file an amended complaint if she should so desire, a privilege of which she did not avail herself within the twenty days, or at all, and her failure continuing for thirty days, the trial court in an order so reciting entered the second order of dismissal from which the present appeal is prosecuted. This explains our earlier statement that the plaintiff elected to stand upon her complaint, *as drawn*. Unless it states a cause of action so viewed, the possibility that it might have been amended to state a claim upon which relief could be granted will not aid her. Martinez **v.** Cook, 56 N.M. 343, 244 P.2d 134.

It should also be mentioned (silence of the complaint on the subject permitting the statement) that no contractual relationship whatever existed between the plaintiff and defendant with respect to the latter's care of decedent's body. As already indicated, the plaintiff was absent from New Mexico at the time of her husband's death and it was not until news thereof occasioned her return to New Mexico, that she contacted defendant for the first time and made the

request out of which the cause of action alleged arises. While the complaint does not so state, it is a legitimate inference from what is left unsaid that either decedent's employers or the public authorities engaged defendant to take possession of decedent's body and prepare it for burial.

Moreover, before proceeding to a discussion of the legal questions involved, we may as well eliminate from the case another matter which otherwise might tend to confuse the issues. It arises on the allegations of fraud on defendant's part in representing to plaintiff as justification for denying her request to view the body that it was charred and burned beyond recognition. Aside from the fact that as a basis for stating a cause of action in deceit, the absence of certain material allegations would render the complaint fatally defective in that behalf, the plaintiff frankly disclaims harboring any intention of seeking damages for deceit. In her reply brief she alleges:

"And let it be said here that the misrepresentation complained of was never intended to be a separate cause of action for deceit. Rather it was so alleged and included in the complaint to show the maliciousness, the wilfullness, the very outrageousness of the Defendant's act."

With these collateral matters out of the way, the question arises: Do the remaining facts alleged, plus such others as arise thereon by reasonable and necessary intendment, disclose a cause of action in plaintiff for the damages she seeks? We think not and shall proceed to give our reasons for so concluding.

Stripped of allegations by way of inducement, the complaint sets up two acts on defendant's part from which the damages suffered are said to have resulted, to-wit:

"1. His refusal to permit the plaintiff to view the corpse in his mortuary; and

"2. His assertion that it was burned beyond recognition."

Under the early common law in England, where matters relating to the burial and preservation of dead bodies were within exclusive jurisdiction of the ecclesiastical courts, no action for damages would lie for injuries to a dead body. However, if any element of trespass to real or personal property appeared in the molestation of remains of the dead, remedies were afforded. 17 C.J. 1143; 25 C.J.S. Dead Bodies, § 8, p. 1026; Foley v. Phelps, 1 App. Div. 551, 37 N.Y.S. 471; Dutto v. Forest Hill Cemetery, 8 Tenn.Civ.App. 120. Of course, there were no ecclesiastical courts in this country, so at an early date there developed a body of law giving a cause of action for unlawful and unwarranted interference with the right of burial. 17 C.J.

1144; 25 C.J.S. Dead Bodies, § 8, p. 1026. For an excellent historical discussion of the whole subject, see article on "Law of Burial" by Samuel B. Ruggles in 4 Bradford Reports, 503.

We find in 15 Am.Jur. 831, § 6 under Topic, "Dead Bodies," the following observations touching the question before us, to-wit:

"* * * In fact, the early common law of England recognized no property or property rights in the body of a deceased person, this being due, undoubtedly, to the fact that the ecclesiastical courts exercised jurisdiction over the affairs of decedents. Although this doctrine has found some support in early American cases, the established rule is that notwithstanding there can be no property right in a dead body in the commercial sense, there is a quasi-property right in a dead body vesting in the nearest relatives of the deceased and arising out of their duty to bury their dead. This right, which corresponds in extent to the duty out of which it arises, includes the right to possession and custody of the body for burial, the right to have it remain in its final resting place so that the memory of the deceased may receive the respect of the living or to remove the body to a proper place, and the right to maintain an action to recover damages for any outrage, indignity, or injury to the body of the deceased."

A study of the texts and decisions seems to establish in the survivors the following rights in relation to the bodies of their dead, to-wit:

"1. The right to the custody of the body.

"2. The right to have the body in the condition in which it was left by death, without mutilation.

"3. The right to have the body treated with decent respect, without outrage or indignity thereto.

"4. The right to bury the body without interference."

There are cases in abundance sustaining causes of action and awarding damages, or declining so to do, for violations of one or more of the above classified rights in surviving kin, claimed or established, typical of which may be cited Teasley v. Thompson, 204 Ark. 959, 165 S.W.2d 940; Crawford v. Larson, 216 Minn. 417, 13 N.W.2d 137; Morrow v. Cline, 211 N.C. 254, 190 S.E. 207; Gurganious v. Simpson, 213 N.C. 613, 197 S.E. 163; Jefferson County Burial Soc. v. Scott, 218 Ala. 354, 118 So. 644; Moloney v. Boatmen's Bank, 288 Mo. 435, 232 S.W. 133; Stahl v. William Mecker, Inc., 184 App.Div. 85, 171 N.Y.S. 728.

In the case at bar, the facts fail to disclose a violation by defendant of any of

the rights enumerated above. She was not denied custody of the body. Upon demand therefor she received it promptly in the condition in which it was left by death, without mutilation. In no manner is it alleged, nor does it otherwise appear, that the body was subjected to any outrage or indignity and, so far as appears, it was at all times while in defendant's custody treated with decent respect.

The single act alleged to have constituted a deprivation by defendant of any right in plaintiff was the refusal to allow her to view the remains. The reason for the refusal, although under the circumstances not obliged to grant the request at all, was said by defendant to be the charred and burned condition of the body. If defendant honestly so believed, the denial arose from a sense of solicitude for plaintiff's feelings. But whatever the reason advanced, whether simply a matter of mistaken opinion, or false, since plaintiff was claiming a right she did not enjoy, the defendant may not be made to respond in damages by reason thereof.

The defendant was in possession of this body following an accident. He had no reason to believe the funeral would be conducted from his mortuary. The plaintiff had not and did not engage him to conduct it. There was no contract, express or implied, calling on defendant to expose the body to the view of the plaintiff, or that of the public. And the moment demand was made on him to deliver the body to plaintiff, the demand was complied with.

In this respect the case is not unlike that of Crawford v. Larson, 216 Minn. 417, 13 N.W.2d 137, 138. The undertaker there conducted a funeral and, on instructions of the family, had the body placed temporarily in a vault at a cemetery, pending intended interment. The relatives failed to pay the undertaker's bill. Later, when the relatives wished to have the body interred, the cemetery refused to permit interment on its grounds until the undertaker's bill was paid. Eventually the relatives employed another undertaker and had the body buried in another cemetery. There was a statute in Minnesota which was declaratory of the American doctrine relative to dead bodies, making it unlawful to hold a body for the payment of a debt or to interfere with a person taking it to a place of burial. It was claimed that the cemetery and the undertaker in the above case had violated this statute. The court said:

"Section 614.23 [M.S.A.] (§ 10230) is a criminal statute, and its terms cannot fairly be extended beyond a reasonable construction thereof. In order to violate the statute, there must be an attempt to detain, or claim to detain, the body of a human being for a debt or demand. We have searched the record in vain for evidence that either the

plaintiff or the 'interpleaded' cemetery association sought to detain the body or claimed to detain it on account of the debt to plaintiff. What both plaintiff and the 'interpleaded' association did was to refuse to go forward with the interment unless the debt was paid. *Larson or his father might at any time, so far as this record discloses, have asked for and obtained the possession of the body. In fact this is what they did do, and they immediately obtained it upon demand.* This does not amount to a violation of the statute. Consequently no cause of action in tort arose therefrom, and the trial court was right in ordering judgment notwithstanding the verdict." (Emphasis ours.)

In as much as there was no right in plaintiff to view, or have the public view, the body of decedent until she had taken it into her possession, and possession was never denied her, but on the contrary was readily granted upon demand, her complaint failed to state a cause of action against defendant. Accordingly, the trial court's action in sustaining the motion to dismiss was proper and should be sustained, and its judgment affirmed.

It will be so ordered.

COMPTON, and LUJAN, JJ., concur.

McGHEE, C. J., and SEYMOUR, J., dissenting.