709 P.2d 190

**Raymond A. KARBEL, Plaintiff-Appellant,**

v.

**Carl John FRANCIS, a/k/a Carl Francis Lopez, Defendant,**

**Thunder Corporation, a New Mexico Corporation, Defendants-Appellees.**

**No. 7913.**

Court of Appeals of New Mexico.

March 28, 1985.

Certiorari Quashed Nov. 15, 1985.

Branch, Eaton & Keenan, Turner W. Branch, Lanny D. Messersmith, Nancy L. Simmons, Albuquerque, for plaintiff-appellant.

Shaffer, Butt, Thorton & Baehr, John A. Klecan, Albuquerque, for defendants-appellees.

## OPINION

NEAL, Judge.

Plaintiff brought a negligence action against Carl John Francis and Thunder Corporation (defendants). Thunder moved for summary judgment, arguing that it owed no duty to the plaintiff under *Doe v. Hendricks*, 92 N.M. 499, 590 P.2d 647 (Ct. App.1979), and that the accident was not foreseeable citing, *Lopez v. Maez*, 98 N.M. 625, 651 P.2d 1269 (1982). The motion was granted and plaintiff appeals. Francis is not a party to the appeal.

The issue is whether private security guards had a duty to detain a drunken driver once they encountered him on the premises, rather than sending him back onto the roads.

The Thunder Corporation security guards, acting in the course of their employment at the Southwest Indian Polytechnic Institute (SIPI) saw Francis driving slowly on campus. His lights were off. He stopped the car and got out, staggering and with a beer in his hand. There were empty beer cans in the car. Francis initially walked away from the guards; they called him back and argued with him about leaving the campus. He was belligerent, and slurred his pronunciations. The guards demanded he leave or they would call the state police. He drove away in an intoxicated condition, with his lights off.

Immediately after leaving the campus he crossed into the wrong lane and ran a stop sign. Moments later he ran into plaintiff, who was riding either a motorscooter or a motorcycle, and the accident severed plaintiff's leg.

Thunder Corporation guards are issued commission cards from the Bernalillo County Sheriff's office. Casey Tallow, one of the guards involved, did not yet have his card and had received no training. He was accompanied by another guard, Garfield Katasee, who did have a commission card. It is the stated policy of Thunder to force intoxicated drivers off campus back onto the road, and the guards are so instructed. Nevertheless, the record also reflects the policy that when a non-student is found on campus with liquor, the guards are to place the individual in "protective custody." An inference from the depositions is that Francis was a non-student. If the non-student appears intoxicated a guard calls the sheriff's department; the guard takes reasonable steps to detain the person until the sheriff arrives. These measures include closing the campus gate and confiscating car keys.

█ The general theory of liability for the acts of a third party (the driver here) is stated in *Metropolitan Coal Co. v. Johnson*, 265 F.2d 173 (1st Cir.1959). Where the original negligence of the defendant is followed by the independent act of a third party which directly results in injury to the plaintiff, the defendant's earlier negligence may be found to be the proximate cause of the injury, " 'if according to human experience and in the natural and ordinary course of events the defendant ought to have seen that the intervening act was likely to happen.' " 265 F.2d at 180 (citations omitted). *See Lopez v. Maez; F & T Co. v. Woods*, 92 N.M. 697, 594 P.2d 745 (1979).

█ The existence of negligence is dependent on the existence of a duty on the part of the defendant to the plaintiff, and the foreseeability of the injury to that plaintiff. *Ramirez v. Armstrong*, 100 N.M. 538, 673 P.2d 822 (1983). Whether a duty exists is a question of law. *Schear v.*

*Board of County Commissioners of the County of Bernalillo*, 101 N.M. 671, 687 P.2d 728 (1984). That the injury here was foreseeable is established in New Mexico. "The serious danger to the public caused by drunken drivers operating automobiles on public roadways is now a matter of common knowledge...." *Lopez v. Maez*, 98 N.M. at 629, 651 P.2d 1269. The question is whether Thunder guards were under a duty to detain, or at least not to direct back to the road, a drunken driver they had stopped on campus.

The specific issue is one of first impression in New Mexico. Had the guards been ordinary citizens who witnessed the driver get out of his car and stagger about in a drunken condition, they would have no duty to attempt to stop him from driving. Generally, the law does not place such affirmative duties on private citizens absent a special relation between the parties. 2 Restatement (Second) of Torts, § 315 (1965). Plaintiff posits two theories which would create a legal duty on the part of the defendants. First, under *Schear*, police officers and others with police authority have a duty to investigate crimes they are informed of or which they witness. Therefore, plaintiff contends that if the guards have authority to arrest, they have a duty at least as far as the premises of SIPI is concerned. Second, plaintiff contends that the guards, whatever their actual authority, took control of Francis and ordered him off campus, thereby creating an unreasonable risk of harm to the public, and a common law duty is found in the control exercised over the driver.

In *Schear*, the supreme court relied on traditional tort concepts of duty to establish liability when police officers fail to take adequate action to protect a citizen from imminent danger. *Schear* found a duty under NMSA 1978, Section 29-1-1 (Repl.Pamp.1984), to investigate all violations of the law, applicable to every sheriff, deputy sheriff, constable, and every ·other peace officer.

There is conflicting evidence in the record regarding the powers and authority

of defendants' employees. The commission card issued to the guards by the county sheriff's department states that the card does not authorize the holder to perform the duties of a sheriff. On the other hand, there was considerable evidence that the guards had authority to make arrests or detain suspects when encountered on campus. The responsibilities of the guards are set out in the Contractor's Responsibilities-Campus Security Services Manual. They include the responsibility to make arrests for violations occurring in their presence, and to enforce the laws of the state. Patrick Romero, employed as the security division leader by defendants, believed the guards have authority to make arrests for violations on school grounds. For example, the county sheriff's department informs him of changes in county jail booking procedures. He outlined the actions guards can take when they find an apparent law violator on campus. If a non-student is found drunk on campus, possible procedures include locking the main gate to prevent him from leaving, calling the sheriff's department by two-way radio, confiscating car keys, or they may make an arrest. There is, therefore, an issue of material fact in whether defendants' employees had authority to detain or arrest Francis when they observed him committing a state law violation on the school premises.

▮ The common law also provides the source of a duty in such a situation based on actual control. The duty of one who takes charge of a third person whom he knows or should know to be likely to cause harm to others, if not controlled, is the duty to exercise reasonable care to prevent the person from doing harm. 2 Restatement (Second) of Torts, § 319 (1965). The Texas court focused on the element of potential control in *Clark v. Otis Engineering Corp.*, 633 S.W.2d 538 (Tex.App.1982), aff'd 668 S.W.2d 307 (Tex. 1983). The court applied the dangerous propensity rule and found that the defendant employer had a duty not to send an intoxicated employee away from work. In that case the employee was said to be "practically helpless," was ordered to go home, and was accompanied to his car. Here, the guards regardless of their legal authority, ordered Francis to stop walking away and talk to them. He complied. They ordered him to leave the campus. He refused. They told him they would call the state police if he did not leave. He then drove away. Evidence that Francis apparently did not want to leave the campus, but did so at the guards' insistence, raises an issue of material fact as to the amount of control exercised. Evidence that guards can detain law breakers on campus by handcuffing them, confiscating their keys, or locking the main gate to prevent them from leaving shows a greater potential for control than that possessed by the employer in *Clark*. The guards were wearing uniforms and had an official appearance which would impart an air of authority.

▮ Defendants note that the element of control in *Clark* arose out of the employer-employee relationship and, therefore, contend that a special relationship of that type is required before finding a duty. However, we believe the element of control to be dispositive. Here, the driver created the necessary relationship by driving on campus in an intoxicated condition in the presence of the guards. The guards, in the exercise of their duties, undertook to remove Francis from the campus. *See Childers v. Southern Pacific Co.*, 20 N.M. 36, 149 P. 307 (1915). Defendants' duty was not to insure the plaintiff's safety, but to exercise reasonable care. *Prosser and Keeton on Torts*, § 56 at 385 (5th ed. 1984). The degree of control the guards possessed is an issue of fact, as is the issue of whether they exercised reasonable care.

Summary judgment is only proper where there are no issues of material fact. *Goodman v. Brock*, 83 N.M. 789, 498 P.2d 676 (1972). Here, there is a factual question whether the defendants' employees had control over Francis. The requisite control may be shown in either of two ways. First, if the guards had the authority to arrest (or detain) then they had a duty to do so. If they did not have such authority,

but exercised actual control over Francis, they had a duty of reasonable care. Whether either duty was breached is a question of material fact. Therefore, summary judgment was improper. We reverse and remand for trial under general negligence principles. Plaintiff should recover his appellate costs.

IT IS SO ORDERED.

WOOD and BIVINS, JJ., concur.