723 P.2d 252

Ruth Y. BEGAY, Hanogani Nez Bitsie, Minnie Conn, Harry K. Harrison, Rex Harrison and David Yazzie, Plaintiffs-Appellants,

v.

The STATE of New Mexico and Dr. John Smialek, the State Medical Investigator, Defendants-Appellees.

No. 7949.

Court of Appeals of New Mexico.

Dec. 10, 1985.

Rehearing Denied Jan. 7, 1986.

Earl Mettler, Shiprock, for plaintiffs-appellants.

Paul L. Civerolo, Carl J. Butkus, Civerolo, Hansen & Wolf, P.A., Albuquerque, for defendants-appellees.

## OPINION

GARCIA, Judge.

This is an appeal from the trial court's ruling on defendants' motion to dismiss pursuant to NMSA 1978, Civ.P.Rule 12(b)(6) (Repl.Pamp.1980), and alternatively, for lack of standing. The six original plaintiffs are all relatives of George Nelson, deceased. Hanogani Nez Bitsie was the decedent's mother; the other five plaintiffs were brothers or sisters of decedent and are parties to this appeal. Plaintiffs sought damages on the basis of an alleged wrongful decision to perform an autopsy on George Nelson. The type of damages recoverable, if any, are discussed in the brief but are not pertinent to this appeal. In its ruling on defendant's motion, the court ruled that Count I of plaintiffs' complaint (the decision to perform an autopsy on the body of George Nelson was made negligently and without adequate reason or justification) failed to state a claim upon which relief could be granted. The court further ruled that the decedent's brothers and sisters did not have standing to pursue Count II (defendants violated the autopsy statute requiring consent of the next of kin); Count III (interference with plaintiffs' free exercise of religion in violation of N.M. Const. art. II, § 11); and Count IV (the alleged conduct constituted a violation of federal constitutional rights giving rise to a cause of action under 42 U.S.C. § 1983). Decedent's mother was allowed to proceed against defendants with her claims under Counts II, III and IV.

A final appealable order was filed September 20, 1984. Plaintiffs timely appealed. Defendants have not filed a cross-appeal. They have, however, briefed jurisdictional matters relating to governmental immunity which were raised below as affirmative defenses. We affirm in part, reverse in part and remand to the trial court.

ISSUES

The issues presented to this court for resolution are:

1). Whether the trial court was correct in dismissing Count I for failure to state a claim;

2) Whether the trial court was correct in dismissing the brothers and sisters of decedent from Count II for lack of standing;

3) Whether the trial court was correct in dismissing the brothers and sisters of dece-

dent from Counts III and IV for lack of standing.

FACTS

The body of George Nelson, a 60-year-old Navajo Indian, was found in an alleyway behind a bar in Farmington, New Mexico on March 9, 1982. The Farmington police questioned several people in connection with the death. Mr. Nelson was seen drinking with other individuals earlier in the day. At that time, decedent had cash on his person and had purchased a bottle of whiskey. Later, decedent was found in the alley with the right front pocket of his pants pulled inside out. His hat and loose change were found near the body. Mr. Nelson had scratches on his forehead and bruises on his face. His wallet was missing. A witness reported having seen someone kick Mr. Nelson as he lay on the ground and then remove his wallet. The police ascertained the identity of the deceased from a local detoxification center. Next of kin, plaintiffs, were notified a few hours after discovery of the body. By the time plaintiffs arrived in Farmington early the next morning, Mr. Nelson's body had been sent to Albuquerque for an autopsy. When the body was returned to Farmington, Ruth Begay, Mr. Nelson's sister, viewed and identified the body which bore a Y-shaped torso cut and other incisions as a result of the autopsy.

Plaintiffs are decedent's mother and five brothers and sisters. They brought an action for damages arising from emotional distress suffered by family members because the body of George Nelson was not handled according to traditional Navajo religious beliefs.

Plaintiffs name the State of New Mexico and Dr. John Smialek, the state medical investigator, as defendants. In their answer, defendants raise immunity under the Tort Claims Act, NMSA 1978, Section 41–4–1 through –27 (Repl.Pamp.1982 & Cum. Supp.1985) as a defense. Defendants also raise the sovereign immunity issue in their appeal brief.

SOVEREIGN IMMUNITY, COUNTS I & II

The issue of governmental immunity is jurisdictional, *Spray v. City of Albuquerque*, 94 N.M. 199, 608 P.2d 511 (1980), and, as such, may be raised by the parties at any time or by the court on its own motion. *New Mexico Livestock Board v. Dose*, 94 N.M. 68, 607 P.2d 606 (1980); *Sangre de Cristo Development Corp., Inc. v. City of Santa Fe*, 84 N.M. 343, 503 P.2d 323 (1972); *Bumpers v. Wallace*, 56 N.M. 462, 245 P.2d 383 (1952).

Common law sovereign immunity for tort actions was abolished by the Supreme Court in *Hicks v. State*, 88 N.M. 588, 544 P.2d 1153 (1975). The following year, the New Mexico Legislature responded by passing the Tort Claims Act which reinstated governmental immunity except in eight classes of activities which are specifically set out as exemptions within the Act. *Fireman's Fund Insurance Company v. Tucker*, 95 N.M. 56, 618 P.2d 894 (Ct.App. 1980). Section 41–4–2 of the Act provides in part: "[I]t is declared to be the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act * * *." Further, Section 41–4–4 declares that governmental entities and public employees, while acting within the scope of their duties, shall be immune from liability for any tort except as waived by the Act. *Tompkins v. Carlsbad Irrigation District*, 96 N.M. 368, 630 P.2d 767 (Ct. App.1980). The public policy declaration of Section 41–4–2, and the immunities proviso of Section 41–4–4, taken together, require that plaintiffs' cause of action must fit within one of the exceptions to the immunity granted to governmental entities and public employees. If immunity has been waived, the particular agency that caused the harm may be held liable for the negligent act or omission of the public employee.

We first determine whether the state is a proper party. It is axiomatic that a state cannot be sued without its consent, *Palmer v. State of Ohio*, 248 U.S. 32, 39

S.Ct. 16, 63 L.Ed. 108 (1918), *Sangre de Cristo Development Corp.* Under the Tort Claims Act the particular agency that caused the harm is the party that must be named in the complaint and against whom a judgment may be entered. *Lopez v. State of New Mexico,* 103 N.M. 468, 709 P.2d 190 (Ct.App.1985), overruled on other grounds, *see* 24 SBB 1095. In *Lopez,* plaintiff's cause of action was against the Regents of the University of New Mexico. Yet, plaintiff simply named the State of New Mexico and various individuals as defendants. We said: "There is nothing indicating that the particular entity responsible is other than the regents or that the state, apart from the regents, has any responsibility." *Id.* at 195. We determined that the trial court erred in failing to dismiss the State of New Mexico as a party-defendant. This case is analogous. There is no claim that the State of New Mexico did anything wrong or has any responsibility for the alleged harm suffered by plaintiffs. Pursuant to our holding in *Lopez,* we determine that the State of New Mexico should be dismissed from this case. *See also Wittkowski v. State of New Mexico,* 103 N.M. 526, 710 P.2d 93, 24 SBB 846 (Ct.App. 1985).

■ We next determine whether immunity has been waived for the claim against Dr. Smialek. Consent to be sued may not be implied, but must come within one of the exceptions to immunity under the Tort Claims Act. *See Redding v. City of Truth or Consequences,* 102 N.M. 226, 693 P.2d 594 (Ct.App.1984). Dr. Smialek is a public employee. Section 41–4–3(E) (Cum.Supp. 1985). Plaintiffs charge Dr. Smialek with negligence, not in the performance of the autopsy, but in deciding to perform an autopsy. Because Dr. Smialek is a public employee, acting in the course of his employment with the State of New Mexico, plaintiffs' right to recover in a suit against him is limited to the conditions prescribed in the Act. *See Methola v. County of Eddy,* 95 N.M. 329, 622 P.2d 234 (1980). If no specific waiver of immunity can be found in the Tort Claims Act, plaintiffs' complaint must be dismissed. Section 41–4–5

through –8, and Section 41–4–11 are inapplicable to this case. Similarly, Section 41–4–12 is not involved in that it applies to law enforcement officers. Dr. Smialek is not a law enforcement officer. *See Anchondo v. Corrections Department,* 100 N.M. 108, 666 P.2d 1255 (1983).

Section 41–4–9 waives immunity for damages caused by the negligence of public employees in the operation of a hospital, infirmary, mental institution, clinic, dispensary, medical care home or like facilities. There is no allegation that Dr. Smialek was involved in the operation of any of the listed facilities, nor may the operation of the state medical investigator's office be read into this exception. *Redding v. City of Truth or Consequences.*

■ Section 41–4–10 provides a waiver for damages caused by public employees providing health care services. No cases are cited to support the argument that the action complained of falls within this waiver, but logic would support the proposition that the decision to perform an autopsy does not involve health care. No health care services were provided to Mr. Nelson nor to any of his family members. To allow plaintiffs to sue under any of these exceptions would be to read into the Act language which is not there. The right to sue state defendants is limited to those rights and conditions expressly presented in the Act. *Methola v. County of Eddy.* We conclude that an allegation of negligent decision-making by the medical investigator does not fall within an exception to the legislative grant of sovereign immunity contained in the Tort Claims Act. The trial court dismissed Count I for failure to state a claim. The district court will be affirmed if it is correct for any reason. *Scott v. Murphy Corporation,* 79 N.M. 697, 448 P.2d 803 (1968). We affirm the dismissal of this claim on jurisdictional grounds.

■ In Count II of the complaint, involving plaintiffs' claim under NMSA 1978, Section 24–12–4 (Repl.Pamp.1981) (providing for consent for post-mortem examinations), the trial court dismissed plaintiffs herein

for lack of standing. Because the issue of sovereign immunity is central to this case, and because our discussion of jurisdictional defects also applies to Count II, this court determines that Count II should be dismissed as to all plaintiffs for failure to state a claim upon which relief can be granted. In dismissing Count II, we necessarily decide that even if Section 24–12–4 does create a private cause of action, it does not override the medical investigator's grant of immunity under the Tort Claims Act. *See* §§ 41–4–2(A) and –4(A); § 41–4–17(A). *Compare Cole v. City of Las Cruces*, 99 N.M. 302, 657 P.2d 629 (1983).

COUNT III

▮▮▮▮ Plaintiffs' Count III concerns an alleged violation of plaintiffs' free exercise of religion guaranteed by the New Mexico Constitution. We have determined that plaintiffs may not sue the state without its consent and that there is no express waiver for the medical examiner under the Tort Claims Act. This same reasoning applies to Count III of plaintiffs' complaint. The state has given no consent to be sued under Article II § 11 of the New Mexico State Constitution. The Tort Claims Act specifically includes state constitutional violations committed by public officers and governmental entities within the torts for which liability may be found, provided that the violations are committed by an entity or officer included in the Act's waivers. *See* § 41–4–4. Accordingly, Count III should be dismissed as to all plaintiffs on jurisdictional grounds.

WHETHER THE TRIAL COURT WAS CORRECT IN DISMISSING PLAINTIFFS' SECTION 1983 CLAIM AGAINST THE STATE FOR LACK OF STANDING

Plaintiffs' last claim, Count IV, concerns alleged violations of the First Amendment to the federal constitution. The trial court found that plaintiffs lacked standing to assert constitutional violations under the federal constitution. Plaintiffs argue that the trial court prematurely declared that the brothers and sisters did not have a suffi-cient stake in the relevant religious practices to give them standing. As in the prior counts, plaintiffs named the State of New Mexico and Dr. Smialek as defendants. We consider whether the state is properly named as a party in this constitutional claim.

▮▮▮ There are two allegations that must be made before a party can state a cause of action under 42 U.S.C. § 1983. First, the complainant must allege that some person has deprived him of a federal right; second, he must allege that the person acted under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). The State of New Mexico is not a person within the meaning of the federal civil rights statutes. *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *DeVargas v. State, ex rel. New Mexico Department of Corrections*, 97 N.M. 447, 640 P.2d 1327 (Ct.App. 1981). Thus, as to the State of New Mexico, plaintiffs have not made an allegation essential to their Section 1983 claim. In the absence of this allegation, plaintiffs' claim must fail. In *DeVargas*, this court ruled that because the state was not subject to suit under Section 1983, the original complaint was a nullity as to the state. *Quern* found that the Eleventh Amendment effectively foreclosed a Section 1983 suit against the state. The state's susceptibility to suit is jurisdictional. The federal constitutional claims against the State of New Mexico are barred as to all plaintiffs for failure to state a claim. The jurisdictional bar to a Section 1983 suit against the state does not, however, dispose of plaintiffs' Section 1983 claim against the medical investigator.

PLAINTIFFS' STANDING TO SUE THE STATE MEDICAL INVESTIGATOR UNDER SECTION 1983

For purposes of our discussion, we assume, but do not decide, that the medical investigator is a "person" within the meaning of Section 1983. We confine our discussion here to the issue of standing.

The case or controversy requirement for standing is one of injury in fact, economic or otherwise. This injury in fact has been called the "irreducible constitutional minimum which must be present in every case." (Citation omitted). *Tax Analysts & Advocates v. Blumenthal*, 566 F.2d 130, 137 (D.C.Cir.1977). Another equally important requirement is that the injury complained of must be causally related to the behavior of defendants. *Cia Petrolera Caribe, Inc. v. Arco Carribbean, Inc.*, 754 F.2d 404 (1st Cir.1985).

Plaintiffs have alleged that they practice and adhere to the Navajo religion and that the performance of an autopsy violated their religious beliefs and violated their rights as individuals to practice their religion. Plaintiffs allege an injury has been suffered by them due to defendants' unlawful conduct. *Duke Power Company v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978).

Defendants seek to ground plaintiffs' standing to assert their federal constitutional claim in a quasi-property right in decedent's body. *See Matter of Johnson*, 94 N.M. 491, 612 P.2d 1302 (1980); *Barela v. Frank A. Hubbelt Company*, 67 N.M. 319, 355 P.2d 133 (1960); *Infield v. Cope*, 58 N.M. 308, 270 P.2d 716 (1954). Defendants cite *Snyder v. Holy Cross Hospital*, 30 Md.App. 317, 352 A.2d 334 (1976). In *Snyder*, the court found that the relief sought by the father of decedent could properly be predicated on the free exercise clause in the state and federal constitutions. The court apparently relied on the father's quasi-property right in the case. Defendants argue that since the brothers and sisters of Mr. Nelson do not possess this quasi-property right, they have no standing to assert their own constitutional rights to practice their religion.

Plaintiffs direct the court to a number of cases which they claim are in opposition to *Snyder*. The cases cited by plaintiffs do not address the issue of the basis for standing to assert a violation of the free exercise clause. Rather, these cases stand for the proposition that religious or moral objections by a family member to an autopsy will be sufficient to override a medical examiner's decision to autopsy unless that autopsy is "necessary" under the relevant statutes. *Teasley v. Thompson*, 204 Ark. 959, 165 S.W.2d 940 (1942), specifically states that the cause of action for the deprivation of the opportunity to provide a Christian burial for decedent belongs to the surviving spouse, or if waived by the surviving spouse, to the person who can be denominated as next of kin.

There is no basis for this court to adopt defendants' reasoning as to the constitutional violations. By the traditional tests of standing, plaintiffs have alleged an injury to their free exercise of religion. Plaintiffs need only allege that defendant's action had a coercive effect on the practice of their religion. *Robinson v. Price*, 615 F.2d 1097 (5th Cir.1980). This, the plaintiffs have done. It will be left to the trial court to determine if plaintiffs' free exercise right is outweighed by the state's interest in authorizing an autopsy under the facts of this case. *See State v. Brashear*, 92 N.M. 622, 593 P.2d 63 (Ct.App.1979).

We determine that plaintiffs have standing to proceed on their federal constitutional claim against Dr. Smialek. In sum, we affirm the trial court's dismissal of Count I of the complaint. Similarly, Counts II and III are dismissed under the principles of sovereign immunity. The effect of the trial court's ruling on defendants' motion to dismiss was to allow Hanogani Nez Bitsie to proceed on Counts II, III, and IV and to dismiss all other plaintiffs from the case. By virtue of our jurisdictional determination, this case is remanded to the trial court with directions to dismiss Hanogani Nez Bitsie's claims under Counts II and III, and to dismiss the Section 1983 claim against the State of New Mexico as to all plaintiffs. All plaintiffs have stated a claim for relief against Dr. Smialek under Section 1983, at least as to the standing requirements at issue in this appeal. Inasmuch as the trial court dismissed claims advanced by the

brothers and sisters under Section 1983, the trial court is reversed as to that portion of its decision. The only claim thus surviving will be the claim advanced by all plaintiffs under Section 1983 against Dr. Smialek.

Each party shall bear its own costs on this appeal.

IT IS SO ORDERED.

WOOD and BIVINS, JJ., concur.

Exhibit "B"

ORDER DENYING MOTION FOR REHEARING

THIS MATTER comes before the court on defendant's motion for rehearing. Defendant requests that we reconsider three issues. After consideration of defendant's motion, we determine that issues one and three have been sufficiently elucidated in our opinion.

In his second point, defendant raises, for the first time, Dr. Smialek's immunity based on non-involvement. Defendant asserts that it is "common knowledge in the legal community" that Dr. Smialek succeeded Dr. Weston whom defendant alleges made the final decision to perform the autopsy. Accordingly, defendant asserts that Dr. Smialek was not the medical investigator at the time of the incident in question; that there is no possibility that he can be found to have injured plaintiffs; and that there is, therefore, no case or controversy between the plaintiffs and Dr. Smialek. These assertions, if true, may provide defendant with the relief requested. It is inappropriate, however, to raise such factual determinations in the appellate court on a motion for rehearing. These matters are properly presented to the trial court by appropriate motion.

IT IS ORDERED that the motion for rehearing be denied.

IT IS SO ORDERED.