FILED
United States Court of Appeals
Tenth Circuit

March 23, 2010

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ELVIN ROSS, SR.; JERRY ROSS;
TOM ROSS; KEN ROSS; CYNTHIA
ROSS; GREG ROSS,

     Plaintiffs-Appellants

     v.

THE BOARD OF REGENTS OF THE
UNIVERSITY OF NEW MEXICO;
THE UNIVERSITY OF NEW
MEXICO and the OFFICE OF THE
MEDICAL INVESTIGATOR;
MERRILL HINES, M.D.; REBECCA
IRVINE, M.D.,

     Defendants-Appellees.

No. 08-2253

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. 07-CV-01037-RB-ACT)**

---

Clayton E. Crowley of Crowley & Gribble, P.C., Albuquerque, New Mexico, for
Plaintiffs-Appellants.

Meena H. Allen of Simone, Roberts & Weiss, P.A., Albuquerque, New Mexico,
for Defendants-Appellees.

---

Before **LUCERO**, **McKAY**, and **HARTZ**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

In this case, the plaintiffs appeal the district court's grant of summary judgment on various state and federal claims arising from an autopsy conducted by state officials. Because we believe the plaintiffs' claims fail as a matter of law, we affirm the district court's decision.

## BACKGROUND

On July 6, 2005, Elvin Ross, Jr., ("the decedent") a San Carlos Apache of one-half sanguinity, passed away at the Lovelace Medical Center in New Mexico where he had been a patient in the Intensive Care Unit for close to a month. The attending physician at Lovelace referred the matter of the decedent's proximate cause of death to the Office of the Medical Investigator at the University of New Mexico ("OMI"). The following day, a representative of the OMI contacted the Ross family to collect background information on the decedent and learned that the decedent had sustained several past instances of head trauma. The OMI determined these instances constituted potential homicides and an autopsy was necessary.[1] The Ross family raised no objections to this autopsy.

On July 8, Dr. Merrill Hines called the Ross family on behalf of the OMI with the preliminary results of the autopsy which, he believed, indicated the decedent's paralysis was both the immediate and proximate cause of death.

---

[1] Under N.M. Stat. § 24-12-4 (2007), the OMI is authorized to conduct an autopsy when it "suspects the death was caused by a criminal act or omission or if the cause of the death is obscure."

However, during the conversation Cynthia Ross, the decedent's sister who was speaking on behalf of the Ross family, related another violent incident in which the decedent sustained head trauma, possibly at the hands of law enforcement officials. Dr. Hines then stated he would need to conduct an extended examination, which would require the removal of a portion of the decedent's brain and spinal cord. He suggested the OMI could remove the tissues it needed for the examination and then release the decedent's body to the funeral home; the OMI would then cremate the tissues once the examination was completed. At this point, Ms. Ross indicated that the removal of the tissues and its subsequent cremation might conflict with her family's Native American religious beliefs. She told Dr. Hines she would talk to the other members of the family about the examination and call him back in a few days.

Nevertheless, before Ms. Ross had called Dr. Hines back, the OMI mistakenly released the decedent's body to a mortuary on July 9 but retained those portions of the decedent's brain and spinal cord necessary to conduct the extended evaluation. Upon learning of the error, Ms. Ross contacted Dr. Hines at the OMI and was told that the mistake was caused by a clerical error. Dr. Hines further told Ms. Ross that the OMI would send the tissues taken from the decedent's body to the mortuary by Federal Express following the completion of the examination. On July 20, Dr. Hines sent the tissues to the mortuary, where they were inserted into the decedent's chest cavity—not in the anatomically

-3-

correct locations.

Following these events, Elvin Ross, Sr., the decedent's father, and the decedent's siblings filed suit asserting, inter alia, claims under 42 U.S.C. § 1983 for violation of the Fourteenth Amendment and state law claims under both the New Mexico Torts Claims Act and the New Mexico Religious Freedom Restoration Act ("RFRA"). The district court granted summary judgment in favor of the defendants on all claims. The court first ruled that the defendants were not "persons" subject to suit under § 1983. The court then determined the decedent's siblings lacked standing to assert any state law claims under New Mexico Supreme Court precedent and dismissed the plaintiffs' claims under the Tort Claims Act as barred by sovereign immunity and the Eleventh Amendment. Finally, the court dismissed the plaintiffs' claims under RFRA, holding that Elvin Ross, Sr., (the only plaintiff with standing) had failed to state a claim upon which relief could be granted.

**DISCUSSION**

"We review the district court's grant of summary judgment de novo, applying the same legal standards used by the district court." *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Id.* Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show

-4-

that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).

We first address the plaintiffs' Fourteenth Amendment claims under § 1983. Section 1983 provides a claim for relief against "any *person* who, under color of state law, deprives another of rights protected by the Constitution." *Ellis ex rel. Estate of Ellis v. Ogden City*, 589 F.3d 1099, 1101 (10th Cir. 2009) (emphasis added). However, in *Will v. Mich. Dep't of State Police*, the Supreme Court held that, in suits for damages, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." 491 U.S. 58, 71 (1989)[2]; *see also Howlett v. Rose*, 496 U.S. 356, 365 (1990) (holding that "the State and arms of the State . . . are not subject to suit under § 1983"). It is undisputed that this suit names only agencies of the State of New Mexico and state employees in their official capacities. Thus, we conclude that the district court was correct in holding that the plaintiffs have failed to state a constitutional claim upon which relief can be granted.

Next we must consider whether the plaintiffs are barred from bringing claims under the New Mexico Tort Claims Act by the doctrine of sovereign

---

[2] On appeal the plaintiffs argue that their § 1983 claims included a claim for prospective injunctive relief. *See Will*, 491 U.S. at 71 n.10 (stating that "[o]f course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983"). We have reviewed the plaintiffs' original complaint, as well as their filings in response to the defendants' motion for summary judgment, and find no such claim.

immunity and the Eleventh Amendment. The Eleventh Amendment bars suits for damages against a state or state agency absent congressional abrogation or waiver and consent by the state. *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002). Under New Mexico law, the state's "[c]onsent to be sued may not be implied, but must come within one of the exceptions to immunity under the Tort Claims Act." *Begay v. State*, 723 P.2d 252, 256 (N.M. Ct. App. 1985), *rev'd on other grounds sub nom. Smialek v. Begay*, 721 P.2d 1306 (N.M. 1986). The plaintiffs argue that the OMI should be considered a "like facility" under an exception to the Tort Claims Act that waives immunity for suits arising from the negligence of public employees working in "any hospital, infirmary, mental institution, clinic, dispensary, medical care home or like facilities." N.M. Stat. § 41-4-9(A) (2004). However, we note that the New Mexico Court of Appeals specifically refused in *Begay* to read "the operation of the state medical investigator's office" into this exception. *Begay*, 723 P.2d at 256. Although this case was reversed by the New Mexico Supreme Court, the reversal was based on other grounds, and we believe that this decision provides sufficient evidence of how New Mexico's courts would rule on this issue. Accordingly, the district court correctly dismissed the plaintiffs' claims under the Tort Claims Act.

Finally we turn to the plaintiffs' claims under New Mexico's RFRA, which waives the state's immunity for suits alleging that the state "restrict[ed] a person's free exercise of religion." N.M. Stat. § 28-22-3 (2004). Although there

are no New Mexico court decisions interpreting this statute, the district court relied on the New Mexico Supreme Court's decision in *Smialek v. Begay*, 721 P.2d 1306 (N.M. 1986), a case decided before New Mexico passed its RFRA statute but addressing facts similar to those in this case. In *Smialek*, the mother and siblings of a deceased man filed suit based on their assertion that an autopsy conducted by the state violated their Navajo religious beliefs. *Id*. at 1306. The court dismissed the siblings' claims, citing to concerns that granting them standing could interfere with the state's need to conduct autopsies, and then held that "the mother . . . was the only proper remaining survivor with standing to assert an alleged violation of the free exercise of her religious beliefs." *Id*. at 1308. Based on this decision, the district court in the instant case dismissed the siblings' claims for lack of standing and also held that Elvin Ross, Sr., lacked standing to assert a violation of the decedent's—rather than his own—religious rights. The court then dismissed Elvin Ross Sr.'s claim because he is not a San Carlos Apache and the record did not contain any evidence of his own religious beliefs.

On appeal, the plaintiffs argue that, while RFRA did not overrule *Smialek*, it sufficiently broadens the protections over the free exercise of religion available under New Mexico law so as to allow their claims to go forward. However, after a careful reading of the RFRA statute, we see no language that would grant the siblings a cause of action for a violation of their brother's religious beliefs.

Additionally, we agree with the district court that the record contains no evidence to support a cause of action for a violation of Elvin Ross Sr.'s religious beliefs. Finally, we agree with the district court that Elvin Ross, Sr., cannot invoke RFRA on behalf of his son in this case. However, we do not decide that a representative would never have standing to invoke RFRA on behalf of a decedent.

Free exercise of religion is defined in the RFRA statue as "an act or refusal to act that is substantially motivated by religious belief." N.M. Stat. § 28-22-2 (2004). Although there is some evidence in the record the decedent may have held beliefs that would have been violated by the autopsy, in this case the decedent did not "act" or "refus[e] to act" before his death. Thus, a representative of the decedent cannot assert a violation of the decedent's right to freely exercise his religious beliefs, as defined by the statute, because the state never prevented him from acting or refusing to act based on those beliefs.[3] We echo the sentiments of the district court, in that we do "not wish to denigrate the legitimate concerns of members of the Ross family that their religious traditions be taken into account." (Appellant's App. at 177.) However, under the

---

[3] We note that we are not deciding whether an executor could ever have standing to bring an RFRA claim on behalf of a decedent based on the decedent's express wishes, which he made known by will or other means generally recognized by law before his death. In such a case, the suit, based on an act by the decedent prior to his or her death, might fall under the language of the RFRA statute if it was motivated by the decedent's religious beliefs. But that is not the case before us today.

circumstances of this case, we agree with the district court that Elvin Ross, Sr., cannot bring an action on the decedent's behalf under New Mexico's RFRA statute.

For the foregoing reasons, we **AFFIRM** the district's court grant of summary judgment in favor of the defendants.