872 P.2d 353

**Lynn LUBOYESKI, Plaintiff–Appellant,**

v.

**Kermit HILL, Steve Dilg, Eleanor Ortiz, and The Santa Fe Public School System, Defendants–Appellees.**

No. 20909.

Supreme Court of New Mexico.

March 21, 1994.

Rehearing Denied March 31, 1994.

Joseph A. Roberts, Santa Fe, for plaintiff-appellant.

White, Koch, Kelly & McCarthy, P.A., W. Booker Kelly, Santa Fe, for defendants-appellees.

*OPINION*

MONTGOMERY, Chief Justice.

This case involves, primarily, the question whether the New Mexico Tort Claims Act overrides or supersedes the New Mexico Human Rights Act, so as to shield a governmental entity from liability that would otherwise flow from a discriminatory practice proscribed by the latter Act. We hold that it does not.

The case arises from an appeal by Lynn Luboyeski from a determination of "no probable cause" by the Human Rights Division of the New Mexico Department of Labor ("the Division"). In the appeal she named as defendants not only the Santa Fe Public School System (i.e., the school board), which had been the respondent before the Division, but also Kermit Hill, Steve Dilg, and Eleanor Ortiz ("the individual defendants"), who had not been named in the proceeding before the Division. The defendants filed a joint motion to dismiss the individual defendants on the ground that they had not been named in the administrative action and thus could not be added on appeal, and to dismiss all of the defendants on the ground that they were immune from liability under the Tort Claims Act, NMSA 1978, Sections 41–4–1 to –27 (Repl.Pamp.1989).[1] The trial court granted the motion, and Luboyeski appeals. We affirm the trial court's order as to the individual defendants and reverse as to the School System.

## I.

On August 21, 1990, Luboyeski filed a complaint with the Division, naming the School System as respondent and claiming that Kermit Hill, another teacher at the school where Luboyeski taught, had touched and made advances toward her in sexually inappropriate ways. She also alleged that Dilg, the principal, and Ortiz, the vice-principal, did not take appropriate action against Hill in response to her complaints and a written grievance she had filed and that they further exacerbated her discomfort by assigning her to the same teaching group as Hill. Luboyeski claimed that as a result of these actions she was constructively discharged and had to seek therapy. In September 1991, the Division made a determination of "no probable cause," which Luboyeski appealed in October 1991 by filing a complaint in district court pursuant to Section 28–1–13 of the Human Rights Act, NMSA 1978, Sections 28–1–1 to –15 (Repl.Pamp.1991).[2]

As noted above, Luboyeski's district court complaint named the School System as a defendant, as well as the individual defendants who had not been parties to the proceeding before the Division. In June 1992, the defendants filed a joint motion to dismiss, contending that parties not named as defendants in an administrative action could not be added on the appeal of that action and that all of the defendants were immune under the Tort Claims Act. The trial court granted the motion by an order entered on August 28, 1992, which order did not reserve any part of the case for further determination. On September 28, 1992, Luboyeski filed a motion for an extension of time to file a notice of appeal. The court granted the motion and extended the deadline for taking an appeal to October 28, 1992. On October 27, 1992, Luboyeski filed her notice of appeal.

1. Both the Tort Claims Act and the Human Rights Act have been amended since Luboyeski filed in August 1990 the complaint which is the subject of this appeal. *See, e.g.,* 1991 N.M. Laws, ch. 29, § 1 (amendment of Tort Claims Act); 1991 N.M. Laws, ch. 205, §§ 1–5 (same); 1993 N.M. Laws, ch. 195, §§ 1–2 (same); 1993 N.M. Laws, ch. 203, § 1 (same); 1993 N.M. Laws, ch. 268, §§ 1–3 (amendment of Human Rights Act). Our discussion is limited to the law that governs the case—that which existed in August 1990—but .we do note that none of the changes embodied in these amendments materially affects our discussion.

2. The Division dismissed Luboyeski's complaint pursuant to Section 28–1–10(B), which provides: "The director [of the Human Rights Division] shall promptly investigate the alleged act. If the director determines that the complaint lacks probable cause, he shall dismiss the complaint and notify the complainant and respondent of the dismissal. The complaint shall be dismissed subject to appeal as in the case of other orders of the commission." Accordingly, the statutory language discussed later in this opinion relating to an appeal of an order of "the Commission" applies equally to orders of the Division.

Before the trial court's order of dismissal on August 28, Luboyeski filed a motion on August 21 to amend her complaint to add a claim under 42 U.S.C. § 1983, which, despite the notice of appeal filed on October 27, the trial court granted in an order entered on December 1, 1992. In that order the trial court stated that the August 28 order of dismissal was with prejudice as to defendant Hill but without prejudice as to the other defendants. We hold that the December 1 order had no effect on the August 28 order and that the August 28 order was a final, appealable order—which we affirm as to the individual defendants but reverse as to the School System.

## II.

■ Although this issue was not raised in the briefs and was not a subject of disagreement between the parties at oral argument, we clarify that the August 28, 1992, order dismissing all of the defendants to the action was a final, appealable order. On September 28, 1992, Luboyeski filed a motion for extension of time to file her notice of appeal, which motion was granted, extending the appeal deadline to October 28, 1992. On October 27 she timely filed a notice of appeal. Although on December 1, 1992, the trial court granted her motion (filed on August 21) for leave to amend her complaint, her timely appeal on October 27 divested the trial court of jurisdiction to grant the motion to amend. *See Kelly Inn No. 102, Inc. v. Kapnison,* 113 N.M. 231, 241, 824 P.2d 1033, 1043 (1992) (pending appeal divests trial court of jurisdiction to take further action which would affect judgment on appeal); *Corbin v. State Farm Ins. Co.,* 109 N.M. 589, 592, 788 P.2d 345, 348 (1990) (trial court acted outside its jurisdiction in granting motion to amend complaint after notice of appeal had been filed). Consequently, the December 1 order was of no effect and did not render the August 28 order a nonfinal order. This determination comports with the position taken by both sides at oral argument.

## III.

■ The individual defendants were not named as respondents in the proceeding be-

fore the Division and were only added as defendants on Luboyeski's appeal to the district court. There is New Mexico law to support the defendants' position that parties who have not been parties to an administrative proceeding should not be added on appellate review of that proceeding. *See Wylie Bros. Contracting Co. v. Albuquerque–Bernalillo County Air Quality Control Bd.,* 80 N.M. 633, 640, 459 P.2d 159, 166 (Ct.App. 1969) ("In the usual case or lawsuit which reaches this court for appellate review, the parties before this court must have appeared as litigants in the court below, and the record must so show. The same is true of the usual appeal from a decision or order of an administrative agency."). However, our determination of this issue turns primarily on the fact that Luboyeski had not exhausted her administrative remedies with regard to the individual defendants. With respect to all counts in her complaint in the trial court, Luboyeski asserted that "the jurisdiction of this Court is invoked pursuant to § 28–1–13, NMSA, 1978." However, individual defendants cannot be sued in district court under the Human Rights Act unless and until the complainant exhausts her administrative remedies against them. In *Jaramillo v. J.C. Penney Co.,* 102 N.M. 272, 694 P.2d 528 (Ct.App.1985), our Court of Appeals held that compliance with the grievance procedure in the Human Rights Act is a prerequisite to suit in district court under the Act: "The comprehensive nature of the Act supports the conclusion that the legislature intended that the grievance procedure is mandatory when unlawful discriminatory practices are alleged." *Id.* at 273, 694 P.2d at 529. *See also Phifer v. Herbert,* 115 N.M. 135, 138, 848 P.2d 5, 8 (Ct.App.1993) ("Compliance with the grievance procedure of the [Human Rights Act] is a prerequisite to suit under this Act."). We do not comment on whether the Human Rights Act provides an exclusive remedy; we simply agree with the holdings of *Jaramillo* and *Phifer* that when a defendant is sued *under the Human Rights Act* the plaintiff must exhaust her or his administrative remedies before bringing an action in district court. *See* § 28–1–13(A) ("Any person *aggrieved by an order of the commission* may obtain a trial de novo in the district

court of the county where the discriminatory practice occurred[.]") (Emphasis added.) Since Luboyeski has not gone through the administrative process that is prerequisite to suing the individual defendants under the Human Rights Act, we affirm the trial court's order dismissing those defendants.

## IV.

■ We turn now to the argument, vigorously asserted by the School System, that the Tort Claims Act "overrode" the Human Rights Act, with the result that the School System was immune from liability because no provision in the Tort Claims Act waives the immunity otherwise granted public entities by that Act. See § 41–4–4(A) (granting immunity to "[a] governmental entity and any public employee while acting within the scope of duty" for any tort except those for which immunity is waived in §§ 41–4–5 through 41–4–12). As is well known in this state, the Tort Claims Act was enacted in 1976, 1976 N.M. Laws, ch. 58, §§ 1–19, in response to this Court's abrogation of sovereign immunity in *Hicks v. State,* 88 N.M. 588, 544 P.2d 1153 (1975), *order and opinion on rehearing,* 88 N.M. 593, 544 P.2d 1158 (1976). The Act includes an exclusive-remedy provision, stating that:

> The Tort Claims Act ... shall be the exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived under the Tort Claims Act and no other claim, civil action or proceeding for damages, by reason of the same occurrence, may be brought against a governmental entity or against the public employee or his estate whose act or omission gave rise to the suit or claim.

Section 41–4–17(A). The Act has contained a similar exclusive-remedy provision since its inception. See 1976 N.M. Laws, ch. 58, § 15(A). The areas for which immunity is waived in the Tort Claims Act are quite specific. See, e.g., §§ 41–4–6 (waiver of immunity for negligence of public employees acting within scope of employment in operation or maintenance of buildings, public parks, machines, or equipment), 41–4–7 (operation of airports), 41–4–9 (medical facili-

ties), 41–4–10 (health care providers), 41–4–11 (highways and streets). The exclusive-remedy provision arguably suggests that Sections 41–4–5 through 41–4–12 provide a complete list of exceptions to an otherwise blanket sovereign immunity. The School System pursues the argument by maintaining that, since the actions for which it has been sued (the wrongful acts of public school personnel acting within the scope of their employment) do not fall within one of these enumerated categories, it is immune from Luboyeski's suit. For her part, Luboyeski argues that the Human Rights Act includes a valid waiver of sovereign immunity.

The Human Rights Act was enacted in 1969, 1969 N.M. Laws, ch. 196, §§ 1–15, to eliminate "unlawful discriminatory practice[s]," *id.* § 4(B) (presently compiled as § 28–1–4(A)(1)), and to create a comprehensive administrative scheme through which claims of discrimination could be adjudicated, *id.* §§ 9–11 (presently compiled as §§ 28–1–10 to –12). Like the Tort Claims Act, it has been modified a number of times since it was first enacted. See, e.g., 1975 N.M. Laws, ch. 248, §§ 1–2; 1983 N.M. Laws, ch. 241, §§ 1–6; 1987 N.M. Laws, ch. 342, §§ 16–25. In 1983, the section of the Human Rights Act that dealt with the procedure by which a determination by the Human Rights Commission could be appealed to the district court was amended to add the following provision: "In any action or proceeding under this section if the complainant prevails, the court in its discretion may allow actual damages and reasonable attorney's fees, *and the state shall be liable the same as a private person.*" 1983 N.M. Laws, ch. 241, § 5 (emphasis added). This section is presently compiled as Section 28–1–13(D). Consistently with this section, the Human Rights Act has from its inception defined the word "person" to include "the state and all of its political subdivisions," see 1969 N.M. Laws, ch. 196, § 2(A) (presently codified as § 28–1–2(A)); and such "persons" are prohibited from engaging in the discriminatory practices that the Act proscribes, see §§ 28–1–7(D), (F), (G), (H), (I).

■ The question before us is whether the explicit language of Section 28–1–13(D)

constitutes a waiver of sovereign immunity. In searching for legislative intent, we presume that the legislature was aware of other statutes in existence at the time a statute was enacted. *See, e.g., New Mexico Beverage Co. v. Blything,* 102 N.M. 533, 534, 697 P.2d 952, 953 (1985). We think it reasonable to presume that the legislature was aware of a law as important and pervasive as is the Tort Claims Act, especially in light of the fact that it amended the Act in 1981, 1982, and 1983.[3] Whenever possible, we must read different legislative enactments as harmonious instead of as contradicting one another. *Quintana v. New Mexico Dept. of Corrections,* 100 N.M. 224, 227, 668 P.2d 1101, 1104 (1983) ("When interpreting a statute we presume that the Legislature was informed as to existing law, and that the Legislature did not intend to enact a law inconsistent with any existing law."). When Section 28–1–13(D) was enacted in 1983, the legislature, presumptively aware of the Tort Claims Act and of its exclusive-remedy provision, clearly and unequivocally stated that, with regard to appeals of decisions of the Human Rights Commission to the district court, "the state shall be liable the same as a private person."

We note that the language of the exclusive-remedy provision of the Tort Claims Act, which states that the Act provides the exclusive remedy "for any tort *for which immunity has been waived under the Tort Claims Act*" (emphasis added), does not foreclose the possibility that the legislature also waived immunity under another act, and we conclude that this is exactly what happened: Section 28–1–13(D) constituted and constitutes a waiver of sovereign immunity for liability imposed on public entities by the Human Rights Commission, or by a district court on appeal from a Commission decision, for violations of the Human Rights Act.

The School System argues that *Begay v. State,* 104 N.M. 483, 723 P.2d 252 (Ct.App. 1985), *rev'd on other grounds, Smialek v. Begay,* 104 N.M. 375, 721 P.2d 1306, *cert. denied,* 479 U.S. 1020, 107 S.Ct. 677, 93 L.Ed.2d 727 (1986), holds that the Tort Claims Act trumps all statutorily created remedies against the state and public employees except those for which immunity has explicitly been waived by the Act. In *Begay,* the plaintiffs sued the state medical examiner and the State of New Mexico under NMSA 1978, Section 24–12–4 (Repl.Pamp.1981), which required consent for postmortem examinations, alleging a wrongful decision to perform an autopsy and consequent damage. The Court of Appeals concluded that the activities of the medical examiner did not fall within one of the categories for which immunity had been waived by the Tort Claims Act and accordingly upheld a motion to dismiss for failure to state a claim, because "even if Section 24–12–4 does create a private cause of action, it does not override the medical investigator's grant of immunity under the Tort Claims Act." 104 N.M. at 488, 723 P.2d at 257.

We find *Begay* distinguishable because, among other reasons, Section 24–12–4 did not provide an express—or, for that matter, an implied—waiver of sovereign immunity. In fact, as noted by the Court of Appeals, it was not even clear that Section 24–12–4 provided a private cause of action. The section required that in order for a physician or surgeon to perform an autopsy or postmortem examination on the body of a deceased person, he had to acquire consent (either by written authorization signed by the decedent during his or her lifetime or by the surviving spouse or certain other persons), but did not provide any remedy where an autopsy or postmortem examination was performed without such consent. More importantly, again, there was no language in the section that could be construed as a waiver of sovereign immunity.

By contrast, the Human Rights Act explicitly provides for an award of actual damages and attorney's fees against "the state and [any] of its political subdivisions" that violate its provisions and effectuates such recovery by explicitly stating in Section 28–1–13(D) that "the state shall be liable the same as a private person." Accordingly, we hold that sovereign immunity has been waived by the Human Rights Act to the extent needed to

---

**3.** *See* 1981 N.M. Laws, ch. 118, §§ 1–2; 1981 N.M. Laws, ch. 267, § 1; 1982 N.M. Laws, ch. 8, §§ 1–3; 1983 N.M. Laws, ch. 123, § 2; 1983 N.M. Laws, ch. 242, § 1.

permit recovery under the Act against the state and its political subdivisions.

For the foregoing reasons, the trial court's order of August 28, 1992, is affirmed as to the individual defendants and reversed as to the defendant School System, and the cause is remanded for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

BACA and FRANCHINI, JJ., concur.