**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number: 2012-NMSC-005

Filing Date:  February 16, 2012

Docket No. 33,074

NEW ENERGY ECONOMY, INC.,

Petitioner,

v.

HON. LINDA M. VANZI,
New Mexico Court of Appeals Judge,

Respondent,

and

PUBLIC SERVICE COMPANY OF
NEW MEXICO and NEW MEXICO
ENVIRONMENTAL IMPROVEMENT
BOARD,

Real Parties in Interest.

Consolidated with:

Docket No. 33,091

AMIGOS BRAVOS, LEAGUE OF WOMEN VOTERS OF NEW MEXICO, and
CENTER OF SOUTHWEST CULTURE,

Petitioners,

v.

HON. LINDA M. VANZI,
New Mexico Court of Appeals Judge,

Respondent,

1

**and**

**PUBLIC SERVICE COMPANY OF
NEW MEXICO and NEW MEXICO
ENVIRONMENTAL IMPROVEMENT
BOARD,**

       **Real Parties in Interest.**

**Consolidated with:**

**Docket No. 33,102**

**AMIGOS BRAVOS, NEW MEXICO
BACKCOUNTRY HUNTERS AND ANGLERS,
NEW MEXICO TROUT, NEW MEXICO
WILDLIFE FEDERATION, and WILDEARTH
GUARDIANS,**

       **Petitioners,**

**v.**

**HON. LINDA M. VANZI,**
**New Mexico Court of Appeals Judge,**

       **Respondent,**

**and**

**NEW MEXICO CATTLE GROWERS
ASSOCIATION, NEW MEXICO WATER
QUALITY CONTROL COMMISSION, NEW
MEXICO ENVIRONMENT DEPARTMENT,
NEW MEXICO ENERGY, MINERALS, AND
NATURAL RESOURCES DEPARTMENT, and
NEW MEXICO GAME AND FISH DEPARTMENT,**

       **Real Parties in Interest.**

**Consolidated with:**

**Docket No. 33,116**

2

**MESQUITE COMMUNITY ACTION COMMITTEE**,

       **Petitioner,**

**v.**

**HON. MICHAEL E. VIGIL,**
**New Mexico Court of Appeals Judge,**

       **Respondent,**

**and**

**HELENA CHEMICAL COMPANY, INC.,**
**NEW MEXICO ENVIRONMENT DEPARTMENT,**
**and ENVIRONMENTAL IMPROVEMENT BOARD,**

       **Real Parties in Interest.**

**ORIGINAL PROCEEDINGS**

Douglas Meiklejohn
R. Bruce Frederick
Santa Fe, NM

for Petitioner New Energy Economy, Inc.

Robin L. Cooley
Alison C. Flint
Denver, CO

for Petitioners Amigos Bravos, League of Women Voters of New Mexico,
and Center of Southwest Culture
Erik Schlenker-Goodrich
Taos, NM

Samantha Ruscavage-Barz
Santa Fe, NM

for Petitioners Amigos Bravos, New Mexico Backcountry Hunters and Anglers,
New Mexico Trout, New Mexico Wildlife Federation, and WildEarth Guardians

Douglas Meiklejohn

3

Eric D. Jantz
R. Bruce Frederick
Jonathan Mark Block
Santa Fe, NM

for Petitioner Mesquite Community Action Committee

Gary K. King, Attorney General
Scott Fuqua, Assistant Attorney General
Santa Fe, NM

for Respondents

Patrick V. Apodaca, Sr. Vice President, General Counsel & Secretary
Carol Graebner, Deputy General Counsel
Albuquerque, NM

Brian J. Haverly
Robert H. Clark
Richard L. Alvidrez
Charlotte A. Lamont
Albuquerque, NM

for Real Party in Interest Public Service Company of New Mexico

Gary K. King, Attorney General
Stephen A. Vigil, Assistant Attorney General
Santa Fe, NM

for Real Party in Interest New Mexico Environmental Improvement Board

David L. Mathews
Albuquerque, NM

for Real Party in Interest New Mexico Cattle Growers Association

Gary K. King, Attorney General
Zachary A. Shandler, Assistant Attorney General
Santa Fe, NM

for Real Party in Interest New Mexico Water Quality Control Commission

Jackson Walker L.L.P.
Robert L. Soza, Jr.

4

San Antonio, TX

The Simons Firm, L.L.P.
Faith Lesley Kalman Reyes
Santa Fe, NM

for Real Party in Interest Helena Chemical Company, Inc.

## OPINION

**BOSSON, Justice.**

**{1}** What level of participation in an administrative rule-making proceeding gives a participant the right to defend that new rule in an appellate court during a subsequent appeal? This Opinion answers that question based on the significance of participation in administrative proceedings by the four Petitioners in this case. The Court of Appeals denied appellee status to all four Petitioners, and the Petitioners requested that this Court issue writs of superintending control to overturn those rulings. We consolidated the four petitions and, after hearing oral arguments, issued the writs requested by three of the Petitioners while rejecting the fourth. We issue this Opinion to explain our reasoning in more detail.

## BACKGROUND

**{2}** Each of the four petitions for writs of superintending control stems from an appeal of a decision made by one of two administrative agencies, the New Mexico Environmental Improvement Board (EIB) or the New Mexico Water Quality Control Commission (WQCC). We first address the three petitions we granted that were filed by (1) New Energy Economy (NEE); (2) Amigos Bravos, League of Women Voters of New Mexico, and Center of Southwest Culture (collectively "the Amigos Bravos Groups"); and (3) Amigos Bravos, New Mexico Backcountry Hunters and Anglers, New Mexico Trout, New Mexico Wildlife Federation, and WildEarth Guardians (collectively "the River Parties"). Those petitions arise from two appeals of administrative rule makings: one appeal challenging rules adopted by EIB and the other challenging rules adopted by WQCC.[1] We then address, at the end of the Opinion, the fourth petition filed by Mesquite Community Action Committee (MCAC),

---

[1] We use the term "rule" to mean any administrative rule, regulation, or standard. The statutes and administrative guidelines pertinent to this Opinion use the terms interchangeably. *Compare* NMSA 1978, § 74-1-5 (1997) ("The board shall promulgate all *regulations* applying to persons and entities outside of the [New Mexico Environment Department]." (Emphasis added.)), *with* NMSA 1978, § 74-1-8(A) (2000) ("[T]he board shall promulgate *rules and standards*" governing food safety, water supply, etc. (Emphasis added.)); *see also* 20.1.1.7(O) NMAC (8/27/2006) ("'regulation' means any rule, regulation or standard promulgated by the board").

5

which we denied.

**Petitions Relating to the Appeal of a Rule Adopted by EIB**

**{3}** Several years ago, NEE petitioned EIB to adopt a new rule, now known as "Rule 100" or the "Greenhouse Gas Reduction Program." EIB decided to hold a hearing on the proposal. In support of its petition, NEE asserts that it submitted over one hundred hours of sworn expert testimony and volumes of exhibits during the hearings. The Amigos Bravos Groups also assert that they supported Rule 100 by submitting technical testimony.

**{4}** Many others also participated in the Rule 100 hearings. NEE reports that nearly one hundred participants that were considered "parties" by EIB, including NEE and the Amigos Bravos Groups, took part in the Rule 100 hearings. In addition, according to NEE, "hundreds" of nonparty members of the public participated. EIB adopted Rule 100 in December 2010.

**{5}** Soon after EIB adopted Rule 100, Public Service Company of New Mexico (PNM), one of the many "parties" to the Rule 100 proceedings, appealed Rule 100 to the Court of Appeals. Six additional parties filed separate appeals challenging EIB's adoption of Rule 100. While PNM sent notice of its appeal to NEE and the Amigos Bravos Groups, neither PNM nor any other appellant named NEE or the Amigos Bravos Groups as parties to the appeal. The appellants named EIB as the sole respondent.

**{6}** Asserting that the appeal "may be affected by actions of the new administration or the 2011 legislative session," PNM filed a motion with the Court of Appeals to extend the time to file its docketing statement. PNM further asserted that "Governor Martinez has indicated that she does not support [Rule] 100 and is actively considering avenues to secure the repeal or otherwise prevent the implementation of that rule and other related rules . . . ." The Court of Appeals granted an extension until May 25, 2011.

**{7}** In April 2011, NEE and the Amigos Bravos Groups sought to intervene as a party to PNM's appeal. While the motions to intervene were pending, PNM requested that the Court of Appeals refer its appeal to mediation, a request apparently unopposed by EIB. The Court of Appeals ordered mediation between EIB and PNM and denied NEE and the Amigos Bravos Groups motions to intervene in the appeal.

**{8}** PNM and the other six appellants took part in the mediation with EIB but without NEE or the Amigos Bravos Groups. Thus, appellate mediation over the future of Rule 100 took place without the parties who had prevailed below. The mediation included only the seven parties who opposed Rule 100 and the newly appointed EIB, now composed of members appointed by the new governor who publically declared her opposition to Rule 100. *See* NMSA 1978, § 74-1-4(A) (2001) (The governor appoints EIB members.).

**{9}** After the mediation began, PNM and EIB jointly requested that the Court of Appeals

6

"temporarily remand" the pending appeal to EIB, apparently because EIB and the seven appellants had agreed that the appeal could be resolved through further EIB proceedings. The Court of Appeals agreed, remanding all seven appeals to EIB for 180 days.

**{10}** On remand, EIB did not reopen the original administrative hearing on Rule 100. Rather, PNM and the six other appellants filed a new petition with EIB, essentially taking the role of petitioners in a new rule-making proceeding that would rescind or amend Rule 100. In the absence of an appellate rule addressing a rule-making "remand," we consider the Court of Appeals' action to be more an abatement of PNM's appeal while Rule 100 is under consideration, a sound exercise of appellate discretion in the interest of efficiency. Nonetheless, NEE and the Amigos Bravos Groups ask this Court to order the Court of Appeals to grant them intervention as parties to the appeal.

**Petition Relating to Appeal of Several Rules Adopted by WQCC**

**{11}** In an unrelated matter, the River Parties participated in an administrative proceeding before WQCC that resulted in WQCC adopting certain federal water quality designations, revised water quality management standards, and policy documents (collectively "the Water Rules"). The New Mexico Environment Department (NMED), the Department of Game and Fish, and the Energy, Minerals and Natural Resources Department requested the Water Rules. Although the River Parties did not initiate the administrative process, they assert that they supported the Water Rules by giving written and oral testimony, including technical testimony, and making legal and closing arguments.

**{12}** WQCC adopted the Water Rules on December 14, 2010. On January 14, 2011, the New Mexico Cattle Growers Association appealed the Water Rules to the Court of Appeals, listing WQCC and the petitioners below (NMED, the New Mexico Department of Game and Fish, and the New Mexico Energy, Minerals and Natural Resources Department) as parties to the appeal. The River Parties, despite their apparent extensive participation below, were not named parties to the appeal. Thereafter, the River Parties filed an *unopposed* motion to intervene in the Cattle Growers Association's appeal. As with the motions to intervene filed by NEE and the Amigos Bravos Groups, the Court of Appeals denied the River Parties' motion. The River Parties now ask this Court to order the Court of Appeals to grant them intervention as parties to the Cattle Growers Association's appeal.

**Legal Background: EIB and WQCC Rule-Making Proceedings**

**{13}** Our ultimate conclusion in this Opinion hinges upon the roles assumed by Petitioners in their respective administrative proceedings below. Thus, before we begin our legal analysis, we make clear what we mean in stating that NEE was the "petitioner" for Rule 100, that the Amigos Bravos Groups and the River Parties submitted "technical testimony," and that all three Petitioners were "parties" during the rule-making proceedings. In addition, it is helpful to have a general understanding of the laws governing the administrative rule-making process.

7

**{14}** Statutes and rules governing EIB's and WQCC's rule-making processes are strikingly similar. In order to adopt a new rule, or amend or repeal an old rule, EIB and WQCC must hold a public hearing. *See* NMSA1978, § 74-1-9(B) (1985); NMSA 1978, § 74-6-6(A) (1993). In order to initiate the public hearing, someone must file a petition proposing a new rule, an amendment to a rule, or a repeal of a rule. *See* § 74-1-9(A), (B); § 74-6-6(B). Thus, for example, EIB may not have held a hearing on Rule 100 if NEE had not proposed that rule. As the petitioner, NEE caused the rule-making process to begin and fulfilled a role that is central to rule formulation.

**{15}** When a rule is proposed, EIB and WQCC have discretion on whether to hold a hearing on the proposal. *See* § 74-1-9(A); § 74-6-6(B). This discretion is significant because EIB could have decided not to hear NEE's proposed Rule 100 for any reason. *See* § 74-1-9(A); § 74-6-6(B).

**{16}** Rule-making hearings are intended to be inclusive, encouraging broad public participation. EIB and WQCC must give "all interested persons reasonable opportunity to submit data, proposed changes to the proposed regulation, views or arguments orally or in writing and to examine witnesses testifying at the hearing." Section 74-1-9(E); § 74-6-6(D). EIB has promulgated rules on rule making to provide the statutorily required "reasonable opportunity" for participation. *See* 20.1.1.400 NMAC (8/27/2006). *See generally* 20.1.1.7 NMAC. While WQCC has not adopted administrative rules on rule making, it does have "guidelines," which in many ways closely resemble EIB rules. *See generally* WQCC *Guidelines for Water Quality Control Commission Regulation Hearings* (1992) (amended 1993) (WQCC 1993 Guidelines), *available at* http://www.nmenv.state.nm.us/wqcc/WQCC1993Guidlines.pdf.

**{17}** We note that EIB and WQCC have the power, to a certain extent, to amend these rule-making rules and guidelines. *See* 20.1.1.300(A) NMAC (8/27/2006); 20.1.1.7(P) NMAC; WQCC 1993 Guidelines, Part III, 301(A). In addition, hearing officers may issue specific orders with respect to a particular hearing so as to provide additional structure, setting more explicit guidelines beyond what is dictated by statute, rule, or guideline. *See* 20.1.1.107 NMAC (8/27/2006); 20.1.1.400 NMAC; WQCC 1993 Guidelines, Part IV, 401(B). Thus, EIB and WQCC may change the details of their rule-making processes, as long as the administrative agencies afford a "reasonable opportunity" for participation.

**{18}** Both EIB and WQCC recognize certain participants as parties to administrative rule-making hearings. If a rule-making participant files early notice and meets certain criteria, EIB rules define that participant as a "party." For example, EIB considers those who file petitions to be parties. 20.1.1.7(K), (M) NMAC. While WQCC does not classify a petitioner as a "party," the requirements for a petitioner are the same for both administrative agencies. A petitioner must file a copy of the proposed rule, indicating any language to be added or deleted and a statement of the reasons for the regulatory change in order to initiate a rule-making hearing. *See* 20.1.1.300(B) NMAC; WQCC 1993 Guidelines, Part III, 301(B). In addition, once a hearing is held on a proposed rule, petitioners must pay to transcribe the

8

hearings. *See* 20.1.1.403 NMAC (8/27/2006); WQCC 1993 Guidelines, Part IV, 404(A). Thus, a petitioner not only causes a hearing to occur, but also, by EIB and WQCC requirement, a petitioner sets the stage for a rule-making proceeding by proposing the specific language of a rule and taking responsibility for creating the transcript of the hearing, which will be relied upon in any later appeals.

{19}   Both administrative agencies recognize persons giving technical testimony as a distinct category of rule-making participants. EIB considers a person presenting technical testimony to be another type of "party." 20.1.1.7(K) NMAC. Although, again, WQCC Guidelines do not designate "party" status, they mirror EIB rules governing technical testimony. *Compare* 20.1.1.7(K) NMAC *with* WQCC 1993 Guidelines, Part I, 103(F). Persons presenting technical testimony to EIB must file notice no later than fifteen days prior to a scheduled hearing. *See* 20.1.1.302(A) NMAC (8/27/2006). For WQCC, notice must be filed no later than ten days prior to a scheduled hearing. WQCC 1993 Guidelines, Part III, 303(A). EIB and WQCC each require that persons presenting technical testimony identify their witnesses along with the witnesses' professional qualifications. *See* 20.1.1.302(A)(1)-(2) NMAC; WQCC 1993 Guidelines, Part III, 303(A)(1)-(2). EIB and WQCC both define technical testimony as "scientific, engineering, economic or other specialized testimony but does not include legal argument, general comments, or statements of policy or position concerning matters at issue in the hearing." 20.1.1.7(R) NMAC; WQCC 1993 Guidelines, Part I, 103(O). Thus, NEE, the Amigos Bravos Groups, and the River Parties, as presenters of technical testimony, were held to a higher standard than other participants, and their testimony was limited to a narrower set of interests than mere preferences for one policy over another.[2] These distinctions are important.

{20}   Unlike the status of a petitioner or a person presenting technical testimony, which EIB and WQCC condition upon fulfillment of certain procedural and substantive requirements, EIB and WQCC provide generally for "participant[s]." Participants include "any person who participates in a [rule-making] proceeding before [EIB or WQCC]." 20.1.1.7(J) NMAC; WQCC 1993 Guidelines, Part I, 103(I). Participants who are not also parties may still testify, file written statements before or during the hearing, and offer exhibits. *See* 20.1.1.304 NMAC (8/27/2006); WQCC 1993 Guidelines, Part III, 304(A), (B).

---

[2]After we released this Opinion, the Amigos Bravos Groups notified this Court that they did not comply with Rule 20.1.1.1.302 of the Administrative Code when submitting technical testimony to EIB. Thus, statements in this Opinion suggesting the Amigos Bravos Groups' compliance are erroneous. The error, however, does not change our holding that the Amigos Bravos Groups had the right to appear as appellees upon appeal of Rule 100. The Amigos Bravos Groups took other specific procedural actions, by filing early entries of appearances, to gain recognition as parties during the rule-making proceedings. Further, the technical testimony they submitted still directly informed the factors that statute requires EIB to consider. Thus, the Amigos Bravos Groups participated in a legally significant manner and should be permitted party status on appeal.

9

Any person attending the hearing who wishes to cross examine any of the witnesses, may do so as long as it furthers the purposes of that hearing. *See* 20.1.1.401(C) NMAC (8/27/2006); WQCC 1993 Guidelines, Part IV, 402(C). In addition, the hearing officer may allow any person, not just a party, to make a brief closing statement. *See* 20.1.1.400(B)(6) NMAC; WQCC 1993 Guidelines, Part IV, 401(B)(6).

**{21}** NEE, the Amigos Bravos Groups, and the River Parties each distinguished themselves from mere participants by fulfilling additional responsibilities during the Rule 100 and the Water Rules proceedings. All three were considered parties. Under EIB rules, NEE was a "party," distinguishable from a nonparty participant, because NEE filed the petition for Rule 100 and fulfilled all the requirements associated with that role, including financing the transcription of the proceedings. The Amigos Bravos Groups were parties as well because they provided technical testimony. Although WQCC Guidelines do not explicitly designate "part[ies]," the River Parties assert that they were considered "formal parties" during the Water Rules rule-making proceedings.

**{22}** After the rule-making hearings were complete, EIB and WQCC had significant statutory discretion to weigh the evidence presented at the rule-making hearings. By statute, EIB may

> *give the weight it deems appropriate to all relevant facts and circumstances* presented at the public hearing, *including but not limited to*:
>> (1) character and degree of injury to or interference with health, welfare, animal and plant life, property and the environment;
>> (2) the public interest, including the social, economic and cultural value of the regulated activity and the social, economic and cultural effects of environmental degradation; and
>> (3) technical practicability, necessity for and economic reasonableness of reducing, eliminating or otherwise taking action with respect to environmental degradation.

Section 74-1-9(B) (emphasis added). WQCC must adopt water quality standards for surface and ground waters of the state that are "based on credible scientific data and other evidence appropriate under the Water Quality Act." NMSA 1978, § 74-6-4(D) (2009). In adopting regulations to prevent or abate water pollution

> [WQCC] shall give weight it deems appropriate to all relevant facts and circumstances, including:
>> (1) character and degree of injury to or interference with health, welfare, environment and property;
>> (2) the public interest, including the social and economic value of the sources of water contaminants;
>> (3) technical practicability and economic reasonableness of reducing or eliminating water contaminants from the sources involved and previous

10

experience with equipment and methods available to control the water contaminants involved;

(4) successive uses, including but not limited to domestic, commercial, industrial, pastoral, agricultural, wildlife and recreational uses;

(5) feasibility of a user or a subsequent user treating the water before a subsequent use;

(6) property rights and accustomed uses; and

(7) federal water quality requirements.

Section 74-6-4(E). We note that persons presenting technical testimony directly inform EIB and WQCC on many of the relevant statutory factors. Thus, NEE, the Amigos Bravos Groups, and the River Parties not only assumed roles that required additional responsibilities and preparation, but they also presented the very kind of evidence that directly informed the administrative agencies' decisions on whether to adopt Rule 100 and the Water Rules. We now turn to whether NEE, the Amigos Bravos Groups, and the River Parties are entitled to be parties to appeals of the rules.

**DISCUSSION**

**{23}**   The New Mexico Constitution provides that "[t]he supreme court . . . shall have a superintending control over all inferior courts . . . ." N.M. Const. art. VI, § 3. We have previously provided guidance for when we will consider a writ of superintending control:

> when a ruling, order, or decision of an inferior court, within its jurisdiction, (1) is erroneous; (2) is arbitrary or tyrannical; (3) does gross injustice to the petitioner; (4) may result in irreparable injury to the petitioner; (5) and there is no plain, speedy, and adequate remedy other than by issuance of the writ.

*In re Extradition of Martinez*, 2001-NMSC-009, ¶ 12, 130 N.M. 144, 20 P.3d 126 (internal quotation marks and citations omitted). We evaluate the five factors independently. *Id.*

**{24}**   Before this Opinion, no case had provided clear guidance—and certainly no case with these or similar circumstances had provided *any* guidance—with respect to who has the right to become appellees in administrative rule-making appeals. Although not necessarily "erroneous" as a matter of law, the Court of Appeals decision to deny intervention for NEE, the Amigos Bravos Groups, and the River Parties did lead to an "arbitrary" result that created a "gross injustice," threatened "irreparable injury," and left these parties without any plain, speedy, and adequate remedy. Accordingly, for the reasons that follow, this Court was compelled to issue a writ of superintending control for these three Petitioners.

**{25}**   EIB argues that we should not grant these writs because the writ of superintending control "will not be exercised to control the discretion of another court." *Albuquerque Gas & Elec. Co. v. Curtis*, 43 N.M. 234, 237, 89 P.2d 615, 616 (1939) (internal quotation marks and citation omitted). While we agree with this general statement of law, the argument

11

misses the point. For the reasons that follow, we hold that the Court of Appeals did *not* have discretion to deny intervention for NEE, the Amigos Bravos Groups, and the River Parties. In the interest of justice, the law compels their participation as parties to these appeals.

**Irreparable Injury to the Petitioners, Leading to an Arbitrary Result and a Gross Injustice**

**{26}**    To successfully appeal a rule adopted by EIB or WQCC, an appellant—such as PNM (challenging Rule 100) or the Cattle Growers Association (challenging the Water Rules)—must allege and prove that the rule is "(1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the transcript; or (3) otherwise not in accordance with law." Section 74-1-9(J) (EIB); NMSA 1978, § 74-6-7(B) (1993) (WQCC). If the Court of Appeals finds that a newly fashioned administrative rule falls short in any of these three ways, then the rule must be "set aside." Section 74-1-9(J); § 74-6-7(A), (B). Thus, if PNM or the Cattle Growers Association successfully appeals Rule 100 or the Water Rules, the appellate court will set those rules aside, giving them no legal effect.

**{27}**    With that understanding of the appeal process, the resulting injury threatened to NEE, the Amigos Bravos Groups, and the River Parties is self-evident: they stand to lose everything. Having made significant and *successful* investments of time and financial resources to secure adoption of Rule 100 and the Water Rules, these groups stand to see their gains erased while they can only watch. As a matter of common sense and fundamental fairness, one would expect our appellate procedures to provide for their participation as parties to these appeals on equal footing with their opponents.

**Guidance from Our Court Rules, Statutes, and Case Law**

**{28}**    Although not as clearly as we would like, our rules of appellate procedure do imply a right for parties to administrative rule making to become parties on appeal. Rule 12-601(B) NMRA provides that "[d]irect appeals from orders, decisions or actions of boards, commissions, administrative agencies or officials shall be taken by filing a notice of appeal with the appellate court clerk, together with the docket fee and *proof of service* thereof on the agency involved and all *parties . . . .*" (Emphasis added.) NEE, the Amigos Bravos Groups, and the River Parties were all recognized as parties to their respective proceedings below. As such, they were entitled to, and did receive, service of notice of the appeals filed with the Court of Appeals.

**{29}**    If Rule 12-601(B) requires service of notice of appeal on "all parties," in addition to the "agency involved," then it must be for some reason. Previously, our Court of Appeals has recognized that, in a typical appeal from a district court judgment involving multiple parties, notice of appeal is served on all parties, not to *require* their participation on appeal but to afford them an *opportunity* to join the appeal. *See Lozano v. GTE Lenkurt, Inc.*, 1996-NMCA-074, ¶¶ 11-12, 122 N.M. 103, 920 P.2d 1057 (reasoning that "[a]fter a party or other interested person has been notified of an appeal, the decision whether to join in the appeal

12

is left to them"); *see also* Rule 12-202(E)(3) NMRA ("The appellant shall give notice of the filing of a notice of appeal . . . by serving a copy on . . . trial counsel of record for each party other than the appellant.").

**{30}** That same logic applies to parties to administrative rule making. The reason to require service of the notice of appeal "on the agency involved and all parties" is to enable them to act, to exercise their right to participate as parties to the appeal if their interests are at risk. On appeal, NEE, the Amigos Bravos Groups, and the River Parties were entitled to make this same choice to participate.

**{31}** On a previous occasion, when faced with the absence of an explicit rule governing proper parties to an administrative appeal, this Court concluded that, "[i]n the absence of a statutory provision as to parties, the question with respect to who may or must be joined as parties to a proceeding to review the decisions and orders of an administrative agency is governed by the rules as to parties in civil actions generally." *Plummer v. Johnson*, 61 N.M. 423, 427-28, 301 P.2d 529, 532 (1956) (internal quotation marks and citation omitted). In *Plummer*, we held that the state engineer was a proper party, if not an indispensable party, to an appeal of his water permitting decision. *Id.* at 427, 301 P.2d at 532. The current guidance on this topic in Corpus Juris Secundum provides that "[i]n the absence of statutory provisions to the contrary, general rules with respect to parties in other civil proceedings apply on judicial review of administrative decisions." 73A C.J.S., *Public Administrative Law and Procedure* § 342 (2004). For the foregoing reasons, we conclude that our rules do authorize those who are parties to administrative rule-making proceedings to participate as parties to an appeal under the circumstances set forth in this case.

**{32}** Respondents argue, without authority, that the term "parties" in Rule 12-601(B) applies only to an agency's *adjudicatory* proceedings, not to rule making. We disagree. Rule 12-601(B) is not specific to adjudications; it includes "decisions" and "actions" of administrative agencies, each of which adequately describe administrative rule making. *See Wylie Bros. Contracting Co. v. Albuquerque-Bernalillo Cnty. Air Quality Control Bd.*, 80 N.M. 633, 639, 459 P.2d 159, 165 (Ct. App. 1969) (holding that the "*decisions* of administrative agencies of the state" described by Article VI, Section 29 of the Constitution of New Mexico, include "*regulations* adopted by a board" (emphasis added) (internal quotation marks and citations omitted)). This Court has never crafted a separate rule for appeals from administrative rule making. *See* Rule 12-102(C)(1) NMRA.

**{33}** We also observe that Rule 12-502(C) NMRA provides for certiorari petitions to this Court which "shall show the names of the *parties*, with the plaintiff, petitioner or party initiating the proceeding in the trial court or *administrative body* listed first." (Emphasis added.) This rule, like Rule 12-601(B), does not distinguish between parties to administrative rule-making appeals and parties to any other type of proceeding.

**{34}** The order denying intervention to NEE and the Amigos Bravos Groups reasoned that "[t]he Air Quality Control Act allows only an adversely affected person to appeal from

decisions of the EIB" (citing Section 74-2-9(A)), and the "[m]ovants were not adversely affected." The same reasoning can be applied to the statute governing WQCC. *See* § 74-6-7(A). We agree with the Court of Appeals, but only in the sense that these statutes specify that an adverse party may *initiate* an appeal. The statutes are silent, however, as to who may *respond* to an appeal taken by an "adversely affected person" that may threaten the interests of the prevailing party below. The appeal statutes are simply not clear on this point.

**The Meaning of "Party" as Intended in Our Court Rules**

{35}   As we have mentioned, the definition of "party" in the context of an EIB or WQCC administrative rule making is not set by statute and, in fact, may be changed by EIB or WQCC without any input from this Court or from the Legislature. Thus, EIB or WQCC could broaden or constrain the term "party," such that the resulting designation might not align with the intended meaning of the term "party" in our rules. In regard to NEE, the Amigos Bravos Groups, and the River Parties, all considered parties by EIB and WQCC, that does not seem to be the case.

{36}   We know that NEE is a "party" under our rules because it initiated the Rule 100 proceedings. *See* Rule 12-502(C) (directing that the appellee petition "shall show the names of the parties, with the party initiating the proceeding in the trial court or administrative body"). Rule 12-502(C) assumes that whoever initiates an administrative proceeding is the first-named *party* in any appeal, regardless how that person is characterized ("plaintiff," "petitioner," or "party initiating the proceeding . . . in the administrative body").

{37}   Beyond the party initiating the proceeding, we need only decide in this case whether participants who have presented technical testimony are "parties" to an appeal as contemplated under our rules. We conclude that they are.

{38}   The Amigos Bravos Groups and the River Parties were not just participants below who happened to be recognized as parties by EIB and WQCC. Rather, each participated in the rule-making proceedings in a legally significant manner. Each was required to file advance notice of participation, naming their witnesses and the witnesses' qualifications, and each was required to satisfy other prerequisites to their testimony. *Cf.* Rule 1-026 NMRA (allowing parties to obtain information about other parties' witnesses at trial through discovery).

{39}   In addition, as we highlighted earlier, each contributed the kind of evidence that directly informed the inquiries made by EIB and WQCC in making their final decisions. In fact, because the "sufficiency of the evidence" is one of the grounds upon which an appellant may challenge the legality of a rule on appeal, the Amigos Bravos Groups' and the River Parties' evidentiary contributions to the rule-making hearing may well come under direct attack on appeal. Thus, we conclude that the requirements imposed upon the Amigos Bravos Groups and the River Parties, the contributions they made, highlighted by their technical testimony, and the possible challenge to those contributions on appeal, afford them a right

14

to defend their positions as parties on appeal.

**No Rule or Case Law Supports Exclusion of Parties on Appeal**

**{40}** The Court of Appeals denied these intervention motions, in part because "[t]here is no rule of appellate procedure allowing for intervention on appeal." While we agree that there is no rule with explicit allowances for intervention, we have now clarified that Rule 12-601, requiring notice of an appeal to all parties below, implicitly provides for the interests of persons in addition to the aggrieved party and the relevant administrative agency. The Court of Appeals order cites *Old Abe Co. v. N.M. Mining Comm'n*, 121 N.M. 83, 86, 908 P.2d 776, 779 (Ct. App. 1995), in support of its decision, but we do not find that case helpful.

**{41}** In *Old Abe Co.*, the Court of Appeals denied two requests to intervene in an administrative appeal. *Id.* The Court of Appeals did not, however, explain its reasons for denying intervention or discuss the facts that dictated its decision. For example, *Old Abe Co.* does not describe what role, if any, the attempted interveners played in the proceeding below before they filed a motion to intervene on appeal. In addition, we do not know if the attempted interveners were petitioners or parties to the administrative process, as were NEE, the Amigos Bravos Groups, and the River Groups; nor do we even know what the administrative process was. Therefore, *Old Abe Co.* fails to illuminate either its own reasoning or how its holding would apply to the vastly different circumstances of this case.

**{42}** The Court of Appeals order states that intervention on appeal would "only be permitted in very exceptional circumstances," citing *Thriftway Mktg.Corp. v. State*, 111 N.M. 763, 810 P.2d 349 (Ct. App. 1990). In *Thriftway*, however, the persons attempting intervention had *not* been involved in the district court proceeding below; they sought to intervene for the first time on appeal, a request which the Court of Appeals granted. *Id.* at 764-65, 767, 810 P.2d at 350-51, 353. Conversely, NEE, the Amigos Bravos Groups, and the River Parties were all parties during the rule making below, each presented technical testimony, and NEE introduced Rule 100 as the petitioner. *Thriftway* offers no guidance in answering the question before us.

**Alternative Plain, Speedy, and Adequate Remedies**

**{43}** Respondents argue that NEE, the Amigos Bravos Groups, and the River Parties have other plain, speedy, and adequate remedies. Specifically, PNM and EIB argue, and the Court of Appeals agrees, that NEE and the Amigos Bravos Groups could participate in EIB's appeal as amici curiae and that such participation would adequately protect their interests. The Cattle Growers Association argues similarly regarding the River Parties' participation

15

in the WQCC appeal.[3] PNM also suggests that NEE and the Amigos Bravos Groups could participate in any future EIB hearings to revise Rule 100 as an adequate alternative to party status on appeal.

{44} We are not persuaded. We seriously doubt, for example, that PNM would have been content to sit on the sidelines as amicus curiae, if it had been successful before EIB and NEE was appealing.

{45} Amicus curiae status does not afford the same rights as those available to a party on appeal. "'Amicus must accept the case on the issues as raised by the parties, and cannot assume the functions of a party.'" *Whittington v. State Dep't of Pub. Safety*, 2002-NMSC-010, ¶ 3, 132 N.M. 169, 45 P.3d 889 (quoting *State ex rel. Castillo Corp. v. N.M. State Tax Comm'n*, 79 N.M. 357, 362, 443 P.2d 850, 855 (1968)). Amici curiae do not have the right to file a brief, may only file "upon order of the appellate court," and may only share in the time allocated to a party for oral argument. *See* Rule 12-215 NMRA. Unlike parties, amici curiae may not make or respond to procedural motions, *see* Rule 12-309 NMRA, and cannot submit a reply brief, *see* Rule 12-213 NMRA. Similar to the Court of Appeals' exclusion of NEE from mediation in this case, amici curiae cannot participate in mediation. *See* Rule 12-313 NMRA (establishing authority for appellate courts to hold settlement conferences); *see also* The New Mexico Court of Appeals Mediation Conference Procedures and Suggestions for Effective Mediation Representation 1 (2003), available at http://coa.nmcourts.gov/mediation/mediation.pdf ("The conferences offer *parties* and their counsel confidential, risk-free opportunities to communicate about underlying interests, self-evaluate their cases, and explore possibilities for voluntary settlements with an informed, neutral mediator." (Emphasis added.)). Further, amici do not have standing to petition this Court for a writ of certiorari. *See N.M. Chiropractors Ass'n v. Katz*, 94 N.M. 554, 555, 613 P.2d 424, 425 (1980). Accordingly, participation as amici curiae does not provide an adequate remedy for NEE, the Amigos Bravos Groups, or the River Parties.

{46} The other alternative remedy, addressing the already adopted rules during any future rule making, hardly provides a plain, speedy, or adequate alternative to party status. Having prevailed below, NEE, the Amigos Bravos Groups, and the River Parties have *earned* the right to defend their gains on appeal. In regard to Rule 100, NEE and the Amigos Bravos Groups may have to start all over again in new rule-making proceedings below. But for the time being, the appeal is simply abated. If EIB decides not to alter the rule on remand, the present appeal will go forward. And, as parties to the appeal, NEE and the Amigos Bravos Groups had the right to be heard by the Court of Appeals even as to the decision whether to abate the appeal or proceed.

**Rule for Administrative Appeals**

---

[3]WQCC takes no position on the issue and states that it welcomes this Court's guidance.

**{47}** For the reasons stated, we hold that those who have participated in a legally significant manner in administrative rule making, as set forth in this Opinion, have the right to participate as parties to an appeal if they express such an intention. NEE, the Amigos Bravos Groups, and the River Parties all qualify as parties.

**{48}** We recognize, however, that if we were to allow *all* parties or other participants in an underlying rule-making proceeding *automatically* to be made parties to an appeal, then serious unintended consequences could arise. Conceivably, there could be hundreds of parties to an administrative rule-making proceeding. Apparently, there were almost one hundred parties to the Rule 100 hearings. The Court of Appeals correctly points out that

> no fewer than fourteen entities have sought to intervene in [the River Parties] case and the two companion writs pending before this Court. Allowing them all to intervene because they can show the kind of interest in the regulation on appeal shown by the other petitioners pending before the Court would invite havoc. This is particularly true in light of the fact that, inevitably, not all of the parties seeking to intervene bring a unique perspective to the issue.

**{49}** We agree that such a large number of appellants and appellees might unnecessarily burden the court. In addition, we recognize that the administrative definition of a "party" to a rule-making proceeding is something of a moving target. As discussed earlier, administrative rules may be changed to define a party more broadly or narrowly, such that "party" may not always mean the same thing. Potentially, this could invite the "havoc" described by the Court of Appeals.

**{50}** Unquestionably, the Court of Appeals has inherent authority over its own docket and plenary discretion in how it manages that docket. *See Rivera v. Am. Gen. Fin. Servs., Inc.*, 2011-NMSC-033, ¶ 14, 150 N.M. 398, 259 P.3d 803. The Court may take reasonable steps to encourage efficiency and avoid unnecessary duplication. For example, the Court may order consolidated briefing by similarly situated parties and avoid the kind of chaos anticipated in its order. Similarly situated parties may well elect to pool their resources and speak with one voice. There are many possibilities for an appellate court to maintain order while protecting the legitimate interests of participants whose level of participation below requires those participants' party status on appeal. For this reason, our rules require notice and a meaningful opportunity to participate as parties to an appeal under the circumstances set forth in this Opinion. We refer our holding to the appropriate rules committee for further study.

**The Air Permit Appeal**

**{51}** We now turn to the fourth petition for writ of superintending control, the one we did not grant. In 2010, Helena Chemical Company (Helena) initiated a notice of intent to remove or rescind its air permit, apparently in an effort to eliminate the conditions imposed by that permit. After NMED's Air Quality Bureau declined to agree with the requested

17

permit changes, Helena appealed that decision to EIB.

**{52}** EIB held a hearing and then denied Helena's request to rescind the air permit on December 29, 2010. When EIB holds a permit appeal hearing, which is an adjudication, it must allow the public "a reasonable opportunity to submit data, views or arguments orally or in writing and to examine witnesses testifying at the hearing." NMSA 1978, § 74-2-7(I) (2003). To facilitate participation in the adjudication, NMED must give EIB "a list of all persons who have expressed in writing an interest" and those persons "who participated in a public hearing on the permitting action." 20.1.2.202(C)(2) NMAC (8/27/2006).

**{53}** Several years earlier, in 2005, MCAC had entered into a "Permit Settlement Agreement And Stipulated Final Order" with Helena and NMED to resolve an air quality permit dispute. MCAC asserts that it did not receive notice of the subsequent Helena air permit hearing when it should have. MCAC does concede, however, that it had *actual* notice of EIB's hearing on the air permit appeal, though it is not clear when. Despite its actual knowledge that the hearing was taking place, however, MCAC does not indicate that it ever filed a request to be heard or to intervene as a party during Helena's permit appeal to EIB. This decision not to take formal steps to participate before EIB bears significant consequences.

**{54}** Like the varying strata of participants established by EIB for rule making, EIB has created designations for adjudications such as air permit appeals. A "party," as applicable in this case, includes "any person who is permitted to intervene in the particular hearing pursuant to [Rule 1-024 NMRA]." 20.1.2.7(H) NMAC (8/27/2006). In addition to the "party" designation, EIB adjudications anticipate a category called "interested participants," which includes persons—other than parties—who file an entry of appearance at least fifteen days before a hearing. 20.1.2.207(A) NMAC (8/27/2006). An entry of appearance must include notice of any witnesses appearing on that person's behalf, and the "interested participant" may cross-examine witnesses. *Id.* There is no indication that MCAC filed an entry of appearance in the Helena air permit adjudication in order to become an "interested participant,"although MCAC did make public statements during the proceedings.

**{55}** Helena appealed the decision by EIB to the Court of Appeals in January 2011, naming NMED as the sole respondent. According to MCAC, it did not expect NMED to mediate with Helena, and so, initially, MCAC was satisfied to file an amicus curiae brief favoring the decision by EIB not to rescind or modify Helena's air quality permit. However, Helena filed a motion to mediate that the Court of Appeals granted. Only then did MCAC move to intervene as a party to the appeal in order to participate in the mediation, but its motion was denied. In its subsequent petition for a writ of superintending control, MCAC requested that this Court order the Court of Appeals to allow it to intervene as a party to Helena's appeal.

**{56}** As explained earlier, our appellate rules do not anticipate affording nonparties below, like MCAC, the right to receive notice of an appeal, nor do they otherwise suggest that

18

nonparties below can become parties on appeal. In *Wylie Brothers Contracting Co.*, the Court of Appeals remarked that "[i]n the usual case or lawsuit which reaches this court for appellate review, the parties before this court must have appeared as litigants in the court below, and the record must so show. The same is true of the usual appeal from a decision or order of an administrative agency." 80 N.M. at 640, 459 P.2d at 166. We have previously cited the reasoning from the *Wylie Brothers Contracting Co.* opinion, recognizing that "[t]here is New Mexico law to support the . . . position that parties who have not been parties to an administrative proceeding should not be added on appellate review of that proceeding." *Luboyeski v. Hill*, 117 N.M. 380, 382, 872 P.2d 353, 355 (1994).

**{57}** Unlike NEE, the Amigos Bravos Groups, and the River Parties, MCAC was not a party to EIB administrative proceeding, the result of which is now on appeal. Moreover, MCAC did not attempt to intervene in the EIB proceeding, although that was an option. As mentioned, it did not attempt to qualify for the available status of "party" or "interested participant," and it did not contend that any evidence it introduced during the appeal to EIB is directly at issue on appeal to the Court of Appeals. Accordingly, we hold that MCAC does not have the right to become a party on appeal to the Court of Appeals. Its sole recourse in Helena's appeal of the permit was to petition the Court of Appeals for *discretionary* intervention which, in this case, the Court was within its authority to deny.

**CONCLUSION**

**{58}** For the foregoing reasons, we grant the petitions for superintending control filed by NEE, the Amigos Bravos Groups, and the River Parties. We deny the petition for a writ of superintending control filed by MCAC.

**{59}**   **IT IS SO ORDERED.**

 

_____
       **RICHARD C. BOSSON, Justice**

**WE CONCUR:**

_____
**CHARLES W. DANIELS, Chief Justice**

_____
**PATRICIO M. SERNA, Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

**Topic Index for** *New Energy Economy v. Vanzi; consolidated with Amigos Bravos v. Vanzi* (*Amigos Bravos I*); *consolidated with Amigos Bravos v. Vanzi* (*Amigos Bravos II*); *consolidated with Mesquite Community Action Committee v. Vigil* ; **Case Nos. 33,074; 33,091; 33,102; 33,116**

| | |
|---|---|
| AL | ADMINISTRATIVE LAW AND PROCEDURE |
| AL-AG | Administrative Appeal |
| AL-AG | Administrative Law, General |
| AL-AC | Arbitrary and Capricious Actions |
| AL-HR | Hearings |
| AL-JR | Judicial Review |
| AL-RU | Rules |
| AL-SR | Standard of Review |
| AL-SE | Sufficiency of the Evidence |
| | |
| AE | APPEAL AND ERROR |
| AE-AC | Amicus Curiae |
| AE-AR | Appellate Review |
| AE-AP | Appellate Rules and Procedure |
| AE-JR | Judicial Review |
| | |
| CP | CIVIL PROCEDURE |
| CP-EA | Entry of Appearance |
| CP-IT | Intervention |
| | |
| CU | COURTS |
| CU-IP | Inherent Powers |
| | |
| GV | GOVERNMENT |
| GV-EN | Environmental Law |
| GV-EB | Executive Branch |
| GV-LU | Land Use |
| GV-RA | Regulation Authority |
| GV-SA | State Agencies |
| GV-WS | Water and Waste Systems |
| | |
| RE | REMEDIES |
| RE-EO | Extraordinary Writs |
| RE-SC | Writ of Superintending Control |